2010 Ark. App. 95
**Rick DOSS, Appellant**

v.

**Carrie MILLER, Appellee.**

**No. CA 08–1516.**

Court of Appeals of Arkansas.

Feb. 3, 2010.

William Farrar Sherman, Little Rock, AR, for appellant.

Andrew D. Ballard, North Little Rock, AR, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Rick Doss appeals from the final order of the Fulton County Circuit Court finding him in contempt and imposing a five-day jail sentence. He argues that the show-cause order was indefinite and that he was not properly notified of the nature of the contempt hearing, which resulted in the violation of his constitutional rights. Appellee Carrie Miller cross-appeals, arguing that the trial court was clearly erroneous in continuing the parties' joint-custody agreement. She claims that the evidence demonstrated that the parties could no longer cooperate in reaching shared decisions concerning their children; that the evidence demonstrated a material change in circumstances; that awarding full custody to her is in the children's best interest; and that Rick should be ordered to pay monthly child support. We affirm the direct appeal, holding that Rick's arguments are not preserved, and we reverse and remand the cross-appeal.

Rick and Carrie were married on March 13, 1998. Two children were born of the marriage, Lily (ten) and Logan (seven). Carrie also has an older daughter, Samantha Kirk, from a prior marriage. On July 30, 2004, the parties were divorced by decree, wherein they agreed to joint custody of the children.

The joint-custody arrangement worked until April 2005, when Carrie married Tim Miller. In November 2005, Rick filed a petition to modify the divorce decree, alleging that there had been a material change in circumstances and seeking sole custody of his children. Rick testified that he sought to change custody after he learned that the Arkansas Department of Human Services filed a case against Carrie and alleged that Tim struck Samantha with a belt. In October 2006, the trial court entered an agreed order, wherein the parties agreed that the divorce decree should be modified to "enjoin and restrain [Tim] from having the minor children in [his] presence" during the pendency of the DHS case involving Samantha. That same month, Rick filed a petition for an ex parte order, alleging that an emergency situation

existed because his children were living with Tim, who had beaten Samantha. Rick acknowledged that the trial court entered the agreed order restraining Tim from Lily and Logan, but further alleged that he nonetheless believed that Tim would be in Carrie's home with the minor children.

On November 3, 2006, Rick filed a petition seeking an emergency hearing based upon the allegations set forth in his petition for an ex parte order. In response, on November 7, 2006, Carrie filed a counterclaim for change of custody. Specifically, she alleged that Rick prevented her from exercising her scheduled periods of custody; shut down communication concerning major decisions affecting the children; failed to communicate and/or prevented communication concerning the children's school activities; slandered her and Tim to the children and to people in the community; and filed five complaints with DHS about Carrie and her husband that were later found unsubstantiated.

On February 9, 2007, the trial court entered an order continuing the petition for an ex parte order until a conclusion was reached in the DHS case against Carrie. The order further returned the parties to their original divorce decree, permitting Tim to return to Carrie's home but restricting him from disciplining Lily or Logan in any fashion. Thereafter, in April 2007, Carrie filed a petition for an emergency hearing and a motion to show cause, alleging that Rick was in contempt of the trial court's February 9, 2007 order because he independently suspended her scheduled periods of custody. Carrie also requested full custody and child support. In his response, Rick stated that he suspended custody of Logan because his health was in danger and Rick deemed it in Logan's best interest to keep and care for him. He agreed that the joint-custody

arrangement should be terminated but contended that he should be awarded full custody. An order to show cause was issued by the trial court on April 7, 2008.

Hearings were held in June and August 2008. At the conclusion of the August hearing, the trial court pronounced from the bench that it was maintaining the joint-custody arrangement, but it warned that it would award custody to the non-offending party if either party made unsubstantiated complaints to the police or DHS, filed for unsubstantiated orders of protection, unilaterally suspended custody or doctor's appointments, talked to the children about the custody case, or failed to communicate concerning the children's welfare. The trial court also found Rick was in willful contempt of court and sentenced him to five days in jail. The final order was entered on October 14, 2008. The parties appeal from the final order.

On direct appeal, Rick argues that the show-cause order was indefinite and that he was not properly notified of the nature of the contempt hearing, which resulted in the violation of his constitutional rights. Anticipating preservation problems, Rick also argues he was not required to make these objections below because the criminal-contempt finding falls within two exceptions to the contemporaneous-objection rule.

Our standard of review for criminal contempt is whether the decision is supported by substantial evidence, viewing the record in the light most favorable to the trial judge's decision. *Holifield v. Mullenax Fin. & Tax Advisory Group, Inc.,* 2009 Ark. App. 280, 307 S.W.3d 608. Contempt is divided into criminal contempt and civil contempt. *Holifield,* 2009 Ark. App. at 2, 307 S.W.3d at 609. The substantive rules on contempt are the same. *Id.* It is a matter between the judge and the litigant; not between the two opposing

litigants. *Holifield*, 2009 Ark. App. at 3, 307 S.W.3d at 610. In order to establish contempt, there must be willful disobedience of a valid order of a court. *Holifield*, 2009 Ark. App. at 3, 307 S.W.3d at 610. Before one can be held in contempt for violating a court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Holifield*, 2009 Ark. App. at 3, 307 S.W.3d at 610.

Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders. *Holifield*, 2009 Ark. App. at 2, 307 S.W.3d at 609. Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Id.* Our court has given a concise description of the two concepts, noting that criminal contempt punishes while civil contempt coerces. *Id.* Therefore, the focus is on the character of relief rather than the nature of the proceeding. *Id.*

Rick correctly states that the trial court's contempt finding was criminal in nature, and he makes multiple arguments as to why the finding should be reversed. He argues that the terms of the divorce decree concerning custody were indefinite and did not put him on notice of his responsibilities. He further argues that because he was not notified of the nature of the contempt hearing until the trial court entered its finding from the bench on August 22, 2008, the finding violated his right to due process, against self-incrimination, and to confront witnesses. These arguments are not preserved.

Rick was placed on notice of the nature of proceeding as soon as the first hearing on June 27, 2008, began.

THE COURT: And your client does understand that if it's proven that he has unilaterally violated the terms of this Court's Orders, that he will go to jail today; he knows that?

COUNSEL FOR RICK: Your honor, that has been explained.

THE COURT: And that the only person that can modify my—the orders of this Court is a circuit judge in the 16th Judicial District. And if he's done so, on his own he does need to be prepared to go to jail. He understands that?

COUNSEL FOR RICK: He would, I think, acknowledge that we had that discussion.

THE COURT: I want to make sure everybody knows what lawyers know, violations of orders get you in jail. I just don't tolerate it.

Rick was in attendance and testified at this hearing. Neither Rick nor his counsel objected at this time, or any other time thereafter, to the trial court's statements clearly identifying the nature of the proceeding. Rick failed to object to the indefiniteness of the divorce decree at this hearing as well.

Moreover, after the June 2008 hearing, the parties recessed for nearly two months until they reconvened on August 22, 2008. No objections by Rick or his counsel were made during that two-month period or during the August 2008 hearing. Further, when the trial court issued its contempt finding from the bench at the conclusion of the August 2008 hearing, neither Rick nor his counsel objected at that time. When the trial court made the contempt finding, it asked, "Is there anything you don't understand about that?" Rick responded, "No, sir." Our court has stated many times that it will not consider arguments raised for the first time on appeal, and even constitutional arguments must be raised below. *Camp v. McNair*, 93 Ark. App. 190, 198, 217 S.W.3d 155, 159 (2005).

Rick argues that his contempt-finding arguments are preserved because they fall within two exceptions to the contemporaneous-objection rule. Our supreme court has recognized four such rare exceptions, known as the *Wicks* exceptions (1) when the trial court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) when defense counsel has no knowledge of the error and thus no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character that the trial court should intervene on its own motion to correct the error; and (4) when the admission or exclusion of evidence affects a defendant's substantial rights. *Rye v. State,* 2009 Ark. App. 839, 373 S.W.3d 354 (citing *Wicks v. State,* 270 Ark. 781, 785–87, 606 S.W.2d 366, 369–70 (1980)). Specifically, Rick argues that the second and fourth *Wicks* exceptions apply. We disagree.

 The second exception does not apply because at the onset of the first hearing, all involved—including Rick and his counsel—were placed on notice that Rick was facing criminal contempt if the trial court found that he willfully violated the court's orders. Therefore, Rick's counsel did have knowledge of the trial court's alleged error and did have the opportunity to object at not only one hearing, but also at a second hearing. The fourth exception also does not apply because there was no ruling made by the trial court admitting or excluding evidence that led to errors that affected Rick's substantial rights. *Wicks,* 270 Ark. at 787, 606 S.W.2d at 370. While Rick cites the trial court's in-chamber, off-the-record interview of Lily for support of the application of this exception, we note that the trial court did not rely upon the interview with Lily in any way when it made its oral contempt findings from the bench or issued its contempt finding in the final order. The trial court's comments concerning Lily only revolved around its custody determination.

In sum, because Rick failed to make any of these contempt-finding arguments below and none of the *Wicks* exceptions apply, we hold that the contempt-finding arguments are not preserved. Therefore, we affirm on direct appeal.

On cross-appeal, Carrie argues that the trial court was clearly erroneous in continuing the parties' joint-custody agreement. She argues that the evidence demonstrated that the parties could no longer cooperate in reaching shared decisions concerning their children; that the evidence demonstrated a material change in circumstances; that awarding custody to her was in the children's best interest; and that Rick should be ordered to pay her monthly child support.

 In cases involving child custody and related matters, we review the case de novo, but we will not reverse a trial court's findings in this regard unless they are clearly erroneous. *Dansby v. Dansby,* 87 Ark. App. 156, 160, 189 S.W.3d 473, 476 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.,* 189 S.W.3d at 476. Because the question of whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Id.,* 189 S.W.3d at 476.

 In determining whether a change in custody is warranted, the trial judge must first decide whether there has been a material change in circumstances since the most recent custody order. *Id.*

at 165, 189 S.W.3d at 479. The burden of proving such a change is on the party seeking the modification. *Id.,* 189 S.W.3d at 479. Although permitted by statute, Arkansas Code Annotated section 9–13–101(b)(1)(A)(ii) (Repl.2008), joint custody of minor children is not favored. *Dansby,* 87 Ark. App. at 160, 189 S.W.3d at 480. The mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of joint custody. *Id.* at 166, 189 S.W.3d at 480. When the parties have fallen into such discord that they are unable to cooperate in sharing the physical care of the children, this constitutes a material change in circumstances affecting the children's best interest. *Id.* at 166, 189 S.W.3d at 480.

We hold that the trial court's final order continuing the joint-custody arrangement was clearly erroneous. There was a mountain of evidence in this case demonstrating that the parties could no longer cooperate in reaching shared decisions in matters affecting their children. According to Carrie, Rick unilaterally suspended Carrie's period of custody on at least two occasions, he unilaterally canceled the children's doctor's visits, he refused to provide her with the children's school information, he made multiple (and unsubstantiated) complaints to the police and DHS, he slandered her and her new husband to the children and the community, he filed for an unsubstantiated order of protection, and he refused to communicate with her about issues involving their children. Rick alleged that Carrie exposed the children to Tim, who was being investigated for child abuse; she exposed Logan, an asthmatic, to smoke in the home; and she permitted the children to ride on dune buggies and motorcycles. This evidence is sufficient to prove that a material change in circumstances had occurred since the joint-custody arrangement was agreed to by the parties. Therefore, we hold that the trial court erred in ordering that the parties continue with the joint-custody arrangement, and we reverse on this point.

Carrie next asks this court to award her sole custody and child support. Because the trial court maintained the joint-custody arrangement, it made no findings regarding either of these issues. As such, in order to accommodate Carrie's request, we would be forced to make factual and credibility findings, which are rightly made by our trial courts. *Harrison v. Harrison,* 102 Ark. App. 131, 139, 287 S.W.3d 601, 608 (2008). As such, we direct the trial court on remand to not only terminate the joint-custody arrangement but also to make custody and child-support determinations.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

PITTMAN and ROBBINS, JJ., agree.