SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-833

| | | |
|---|---|---|
| | | **Opinion Delivered** February 19, 2014 |
| TASHA L. NICHOLS | | APPEAL FROM THE MILLER |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [No. 46DR-09-222] |
| V. | | |
| | | HONORABLE KIRK JOHNSON, |
| | | JUDGE |
| ROGER TEER and TERESA TEER | | |
| | APPELLEES | AFFIRMED |

**LARRY D. VAUGHT, Judge**

Tasha Nichols appeals the order entered by the Miller County Circuit Court denying her motion to change custody. On appeal, Tasha argues that the trial court erred in finding that she failed to establish a material change of circumstances. We affirm.

Tasha and her former husband, Troy, have four children, TAN (dob 9-24-02), TWN (dob 12-21-04), TEN (dob 2-19-04), and TNN (dob 2-6-07). In May 2009, Troy filed for divorce and was awarded temporary custody of the children. After a July 9, 2009 hearing, the divorce was granted and permanent custody of the children was awarded to Troy.

On July 31, 2010, Troy's parents, appellees Teresa and Roger Teer, moved to intervene in the Nicholses' divorce case, seeking custody of the children based on allegations that the children had been in their care since April 2009 and that neither parent had stable housing. A hearing on the Teers' request for custody was held on August 5, 2010, during which Tasha agreed that the Teers should have temporary custody of the children. Tasha was permitted

supervised visitation, at her mother's home, unless a "disruption" occurred, in which case future visitation would take place at Family Matters (a child visitation and exchange center) at Tasha's expense. A final hearing on the Teers' motion for custody was held on October 21, 2010,[1] after which the trial court (1) awarded permanent custody of the children to the Teers; (2) awarded Tasha supervised visitation, including the provision that authorized a change in the visitation location; and (3) ordered Tasha to pay child support.

On February 16, 2012, Tasha filed a petition for change of custody, alleging a material change of circumstances. At the hearing on her motion a year later on February 26, 2013, Tasha testified that she had held the same job and lived in the same home for the past six months and that the Teers moved the children from public school and placed them in a private school without her consent. The focus of her motion, however, was her contention that for the past year the Teers frustrated visitation by refusing to talk to her and demanding that visitation take place at Family Matters.[2] Tasha told the trial court that the Teers' actions effectively terminated her visitation because she had been unable to contact Family Matters to arrange it. She said that no one answered the phone at Family Matters when she called and that the doors were locked when she went there. She also claimed that she could not afford to pay the visitation fees required by Family Matters. Tasha denied disrupting visitation, specifically denying that she cursed Teresa in the presence of the children.

---

[1]Tasha did not attend the hearing.

[2]Tasha testified that the Teers were making her move visitation to Family Matters because they were upset when she told them that she was going to hire a lawyer to seek custody of the children.

When questioned about child support, Tasha admitted that she did not pay it from September 2010 to March 2011, because she was not working. She said that she did not pay support from August 2012 to February 25, 2013 (the day before the hearing), although she was working. She added, however, that she paid $125 in child support the day before the hearing and that her $791 tax refund was "intercepted" by the IRS for child-support purposes, which she claimed would cover the arrearage.

April Potts, Tasha's mother, who initially supervised Tasha's visitation, testified that there had been no disruptions. Potts corroborated Tasha's testimony that visitation stopped after Tasha told the Teers that she planned to seek custody. Potts testified that on more than five occasions, she contacted Teresa (by phone and text message) to request visitation, but Teresa said no.

Priscilla Hines, Tasha's sister, testified that she was aware of Tasha's attempts to set up visitation but that the Teers would not talk to Tasha. Tasha's aunt, Dawn Jordan, testified that she was at the park during one of Tasha's visitations, and no disruptions occurred.

Teresa testified that she has had the children since April 2009, when Tasha dropped them off, announcing "you can have these kids. I'm going on with my life. I can't find a babysitter. . . . You're welcome to these kids." Teresa told the court that the children were doing very well. They made the A honor roll at the private Christian school the Teers moved them to. She admitted not contacting Tasha about moving the children to private school because she said that she had full custody and the children wanted to go there. She said that she and her husband have

taken good care of the children—fed, clothed, and housed them—and it would upset them to leave.

Teresa also told the court that when she was initially awarded custody and Tasha was awarded supervised visitation, Teresa requested that she not be required to supervise Tasha's visitation because "I've taken many confrontations from [Tasha] and I did not feel like it would be a good situation for the children to sit there and listen to that." Teresa stated that she also asked for the provision in the custody order permitting visitation at Family Matters should visitation problems arise.

According to Teresa, there were several instances when Tasha, upset when the Teers could not schedule visitation convenient for Tasha, would send "nasty texts" or give a "cussing" to Teresa. On one occasion Tasha told Teresa that she wished Teresa would die. Teresa also testified about an incident during a visitation at a park where Tasha wanted to take one of the children to the restroom at Potts's house but Teresa wanted the child to use a restroom at the park. Tasha became upset, and she and one of her sisters "cussed" Teresa in the presence of the children. After that incident, Teresa told Tasha that future visitations should be held at Family Matters. That same week, Teresa went to Family Matters, registered, and paid the fee.

Teresa also testified about an incident that occurred while she was at work at a convenience store. On one occasion, Roger and the children stopped by Teresa's work to pick up pizza. According to Teresa, Tasha entered the store and walked around while talking on her cell phone. When they saw their mother, two of the children (girls) followed Tasha around the store calling "mama." The two boys hid under a booth. When Tasha got to the cash register, one

of the girls said, "Mama, are you not going to talk to us?" and walked away upset. Before leaving the store, Tasha reached down and said something to the girls, kissing one of them on the cheek. She told the boys to come out from under the booth and give her a hug.

Teresa's co-worker, Alisa Bottoms, was also working at the convenience store the day that Tasha entered while talking on her phone. Bottoms corroborated Teresa's testimony that two of the children ran up to Tasha and tried to talk to her but Tasha did not get off the phone. Bottoms testified that Tasha did not say anything to her children until she was walking out of the store.

Roger, who also witnessed the convenience-store incident, agreed with the accounts given by Teresa and Bottoms.[3] He further testified that it was in the best interest of the children to stay with him and his wife.[4]

The trial court entered a lengthy letter opinion on April 23, 2013, denying Tasha's motion for change of custody. A formal order was entered May 29, 2013, finding that Tasha failed to establish a material change of circumstances. The order further provided that while it was not necessary to make a best-interest determination because Tasha failed to prove a material change of circumstances, it was in the best interest of the children to remain in the custody of the Teers

---

[3]Tasha testified in rebuttal that she remembered the convenience-store incident. She denied ignoring the children. She said that she gave all four kids hugs and kisses and told them she loved them.

[4]The Teers also presented the testimony of Cody Bohn and Vonda Williams, who attended church with the Teers and the children. Both Bohn and Williams testified that it is in the best interest of the children to stay with the Teers.

"as the history of the case shows neither parent has been a fit parent to the children." This appeal followed.

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Preston v. Preston*, 2014 Ark. App. 58, at 2. We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.* This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Anderson v. Thomas*, 2013 Ark. App. 653, at 2. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.* at 2–3. The reason for requiring more stringent standards for modifications is to promote stability and continuity in the life of the children and to discourage repeated litigation of the same issues. *Id.* at 3.

The party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id.* In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Id.*

In its letter opinion, the trial court provided great detail in support of its conclusion that Tasha failed to prove a material change of circumstances. The trial court found that Teresa was a credible witness and that the Teers were justified in removing themselves and the children from Tasha's disruptive behavior. The trial court further found that the Teers' decision to have visitation at Family Matters was not unreasonable based on the custody order giving them that option, stating that the Teers "acted completely within the parameters of the custody order and cannot be said to be interfering with visitation rights when they were exercising the discretion granted to them in the order."

The trial court also found that Tasha's lack of visitation was based solely on her inaction to complete the Family Matters application and schedule the visits—it was not based on the actions/inactions of the Teers—and that Tasha's explanation as to why she did not use Family Matters was not credible. Furthermore, the trial court found that Tasha's plea of distress of not having visitation was severely undermined by her behavior at the convenience store when she demonstrated a lack of interest when she saw her children and by her lack of effort in pursuing visitation at Family Matters. The trial court acknowledged Tasha's testimony that she had made improvements toward stability by maintaining employment and housing for the past five to six months but found that Tasha's behavior in failing to pay child support the past six months and virtually ignoring the children when she saw them at Teresa's workplace "belied" her improvement.

Finally, the trial court found that the Teers' decision to remove the children from public school and place them in private school was not a material change of circumstances. The trial

court noted that the Teers had full custody of the children, which gave them implied authority to enroll them in the school of their choice. Also, there was no evidence that the new school had any negative impact on the children.

On appeal, Tasha disputes the trial court's findings and contends that the evidence showed that the Teers "without good cause, took it upon themselves to stop . . . visitation." She denies that a disruption in visitation occurred sufficient to change the location of visitation to Family Matters. And she contends that her testimony that she attempted to establish visitation at Family Matters on several occasions was not refuted. Finally, she argues that there is no dispute that the Teers removed the children from public school to private school without consulting her.

These arguments are challenges to the credibility findings made by the trial court and to the weight the trial court gave to the evidence, and the trial court did not weigh the evidence in favor of Tasha. Rather, it found that her testimony lacked credibility and that her behavior contradicted her statements to the court. The trial court further found that the testimony of the Teers was credible; accordingly, it weighed the evidence in their favor. We defer to the trial court's superior position to view and judge the credibility of the witnesses. *Preston*, 2014 Ark. App. 58, at 2.

Furthermore, in our de novo review, we cannot say that the trial court clearly erred in concluding that Tasha failed to prove a material change of circumstances. There was evidence that during visitation Tasha was verbally abusive to Teresa; that Tasha's behavior occurred in the presence of the children, caused them stress, and disrupted visitation; and that the Teers

were justified in changing the location of the visitation based on the disruption provision found in the custody order. There was also an absence of evidence demonstrating that the change in schools caused harm to the children. Therefore, we affirm on this point.

Alternatively, Tasha argues that "she should not have been required to show a material change of circumstances." In what appears to be a best-interest-of-the-children argument, she contends that the trial court should have granted her motion to modify custody because she presented evidence that she is a fit and stable parent and that she has never been declared unfit. However, the law is clear that

> [t]he party seeking modification of the custody order has the burden of showing a material change in circumstances. *Alphin v. Alphin*, 364 Ark. 332, 219 S.W.3d 160 (2005). In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Tipton v. Aaron*, 87 Ark. App. 1, 185 S.W.3d 142 (2004).

*Anderson*, 2013 Ark. App. 653, at 3. In this case, Tasha's burden was to first prove a material change of circumstances. The trial court found that she failed to carry her burden, and we affirm that finding. Therefore, we do not reach the merits of Tasha's best-interest-of-the-children arguments.[5]

---

[5]To the extent that Tasha's best-interest arguments incorporate the claim that she was entitled to the constitutional presumption afforded a natural parent in a custody case, we cannot reach the merits of such a claim. It was not raised below, was not ruled on by the trial court, and cannot be raised for the first time on appeal. *Harrison v. Phillips*, 2012 Ark. App. 474, at 1, ___ S.W.3d ___, ___ (holding that the appellant's constitutional argument was not preserved for appeal because it was not raised and developed before the trial court and because the appellant failed to obtain a ruling from the trial court); *Camp v. McNair*, 93 Ark. App. 190, 198, 217 S.W.3d 155, 159 (2005) (stating that "[o]ur court has stated many times that it will not consider arguments raised for the first time on appeal, and even constitutional arguments must



Affirmed.

G<small>LADWIN</small>, C.J., and H<small>IXSON</small>, J., agree.

*Claudell Woods*, for appellant.

---

be raised below").