

# ARKANSAS COURT OF APPEALS

DIVISIONS IV & I
No. CV-14-91

| | |
|---|---|
| CHERI SUZANNE MCCOY<br>APPELLANT | **Opinion Delivered** November 19, 2014 |
| V. | APPEAL FROM THE BAXTER<br>COUNTY CIRCUIT COURT<br>[NO. DR-2004-539-4] |
| VERNON JEFFREY KINCADE<br>APPELLEE | HONORABLE GORDON WEBB,<br>JUDGE |
| | AFFIRMED |

### PHILLIP T. WHITEAKER, Judge

This appeal arises from a child–custody modification. The Baxter County Circuit Court entered an order modifying the joint-custody arrangement of the parties' minor children, placing primary custody in appellee, Vernon Jeffrey Kincade, and providing appellant, Cheri Suzanne McCoy, with visitation. McCoy appeals the trial court's decision, arguing that the trial court erred in finding that a material change of circumstances existed to support modification. We affirm.

On appeal in these types of cases, we perform a de novo review, but we will not reverse the trial court's decision unless the findings are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003); *Ross v. Ross*, 2010 Ark. App. 497. Our analysis must now turn toward this de novo review.

The parties were granted an absolute divorce in December 2004. The divorce decree incorporated a child-custody and property-settlement agreement by which the parties were to share joint custody of their two minor children. The agreement was very specific. The children would reside with Kincade during the week and with McCoy the first three weekends of each month, as well as the fifth weekend of any month with five weekends. Kincade would have the children in his care during the fourth weekend of every month. However, McCoy was entitled to visitation with the children on the Thursday prior to Kincade's weekend with the children. During the summer months, McCoy was given custody of the children for two weeks in June, two weeks in July, and one weekend in August, none of which were to be consecutive. The order further stated that the neither party would be entitled to permanently remove the children from Baxter County or enroll the children in any school except the Moutain Home public schools without the permission of the other parent.

Approximately one month after the decree had been entered, McCoy moved to Fayetteville, a distance of over 122 miles from the home of Kincade and the children. The parties were initially able to work within the agreement despite the move.[1] Eventually, Kincade filed a petition to modify custody in January 2013, alleging that there had been a material change of circumstances; specifically, that the parties children were older and desired to be involved in numerous activities, that McCoy was unwilling to facilitate the children's

---

[1]The parties, without court approval, reached certain modifications by agreement: a neutral place of pick-up and drop-off and a forfeiture of the Thursday visitation during the fourth week of every month.

SLIP OPINION

involvement in those activities, and that these activities were integral to the development of the children.

A custody hearing was held, and the trial court heard testimony from the children and both parents. The trial court thereafter issued a letter opinion setting forth its findings. The court found that a material change of circumstances had occurred since the decree had been entered. The trial court expressed its belief that the "fundamental nature" of the original joint-custody arrangement changed when McCoy moved to Fayetteville and that the move had the "potential to significantly affect the well being of the children." While the court praised the parents for their ability to make the arrangement work for almost nine years, it found that the distance resulting from the move had begun to affect the lives of the children as they grew older. The court found that the children had since matured to a point where their school activities and social interactions with their classmates were becoming more important in their development into young adulthood and that the current arrangement, which forced them to miss those activities and interfered with those interactions, was detrimental to them. As a result, the court entered an order granting the change in custody.

When a change of child custody is sought in a joint-custody arrangement, the trial court uses a two-prong analysis: (1) has a material change in circumstances transpired from the time of the divorce decree? (2) If so, what is in the best interest of the child? *See Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234. Under the first prong, the court must determine two things: (1) has a change of circumstances occurred? (2) If so, is this change of circumstances material? This analysis necessarily turns in large part upon credibility determinations, and we give special deference to the superior position of the trial court to

Cite as 2014 Ark. App. 664

evaluate the witnesses, their testimony, and the children's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007). As a matter of law, there are no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children. *Keith v. Keith*, 2013 Ark. App. 700, 430 S.W.3d 845, *Judkins v. Duvall*, 97 Ark. App. 260, 248 S.W.3d 492 (2007).

McCoy challenges the trial court's conclusion only under the first prong—that there had been a material change in circumstances. The trial court found that, at the time of the custody hearing, McCoy's move to Fayetteville, Arkansas, was having an adverse impact upon the children, thereby creating a material change of circumstances since the divorce decree had been entered. We cannot find that such a determination was clearly erroneous. The move to Fayetteville was clearly a change occurring after the entry of the divorce decree and, as the court found, fundamentally changed the nature of the underlying custody agreement. Giving special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the children's best interest, we do not believe that the trial court's finding that the change was material was clearly erroneous, given that, at the time of the hearing, the court determined that the move was having an adverse impact on the children. For these reasons, we affirm.

Affirmed.

GLADWIN, C.J., and PITTMAN, WYNNE, and HIXSON, JJ., agree.

BROWN, J., dissents.

**WAYMOND M. BROWN, Judge, dissenting.** According to applicable standard of review, you must show that a material change has occurred in order to change custody. I feel

strongly that the appellee did not meet his burden of proof. For the following reasons, I respectfully dissent.

## I. *Standard of Review*

In reviewing child-custody cases, we consider the evidence de novo but will not reverse a trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence.[1] We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses.[2] This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.[3]

The party seeking modification of the custody order has the burden of showing a material change in circumstances.[4] In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children.[5]

Arkansas law is well settled that the primary consideration in child-custody cases is the

---

[1]*Nichols v. Teer*, 2014 Ark. App. 132, at 6, 432 S.W.3d 151, 154 (citing *Preston v. Preston*, 2014 Ark. App. 58, at 2).

[2]*Id.*, 2014 Ark. App. at 6, 432 S.W.3d at 155

[3]*Id.*

[4]*Evans v. McKinney*, 2014 Ark. App. 440, at 4, 440 S.W.3d 357, 359 (citing *Anderson v. Thomas*, 2013 Ark. App. 653).

[5]*Id.*

welfare and best interest of the children; all other considerations are secondary.[6] Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody.[7] The reason for requiring more stringent standards for modifications than for initial custody determinations is to promote stability and continuity in the life of the child, and to discourage repeated litigation of the same issues.[8] Custody awards are not made or changed to punish or reward or gratify the desires of either parent.[9]

## II. *Material Change in Circumstances*

On appeal, appellant argues that there are no material changes in circumstances.[10] When a change of child custody is sought in a joint custody arrangement, the trial court must first determine that a material change in circumstances has transpired from the time of the divorce decree and, then, determine that a change of custody is in the best interest of the

---

[6]*Id.*, 2014 Ark. App. 440, at 3–4, 440 S.W.3d at 359 (citing *Anderson v. Thomas*, 2013 Ark. App. 653).

[7]*Id.*

[8]*Id.*

[9]*Word v. Remick*, 75 Ark. App. 390, 393, 58 S.W.3d 422, 424 (2001).

[10]Appellee argues that appellant waived this argument where she too argued below that there was a change in circumstances while seeking primary custody of the children for herself, albeit, for different reasons. Essentially, appellee argues that this equates to a stipulation between the parties that there was a material change in circumstances. A stipulation is a "name given to any agreement made by the attorneys engaged on opposite sides of a cause (especially if in writing) regulating any matter incidental to the proceedings or trial, which falls within their jurisdiction." *Davis v. State*, 375 Ark. 368, 377, 291 S.W.3d 164, 170 (2009) (citing *McClard v. Crain Mgmt. Grp., Inc.*, 313 Ark. 472, 476, 855 S.W.2d 929, 931 (1993) (quoting *Black's Law Dictionary* 1269 (5th ed. 1979)). However, this argument fails because the parties' attorneys did not enter into an agreement regarding the existence of a material change in circumstances.

SLIP OPINION

child.[11] The circuit court should not have reached the best interest determination that it made because there was no material change in circumstances.

### A. Appellant's Move to Fayetteville, Arkansas

In its letter opinion, the court noted that the arrangement between the parties was not a "true joint custody arrangement" and "[had] never been." Accordingly, as reflected in its final order, it found that "the fundamental nature of the original agreement of joint custody changed with the potential to significantly affect the wellbeing of the children when [appellant] moved to Fayetteville, Arkansas." However, in the parties' settlement agreement, which was incorporated into the divorce decree by reference, regarding child custody, the court stated:

> The general scheme of physical custodial time with the children set out above is subject to change by agreement of the parties. The parties commit to being flexible with each other so as to meet the children's need to spend time with both of their parents.

This essentially meant that the court permitted the parties to amend the court's order regarding custody by agreement. The parties did just this. Appellee testified that when appellant moved away one month after the decree, the parties "modified the schedule." They removed appellant's Thursday visitation, as the 122-mile distance made it unreasonable for appellant, and left the remainder of the order in place. They continued in this fashion for almost nine years. The court acknowledged this where it stated in its letter opinion that "[t]he parties apparently immediately made adjustments and rearrangements to the Court's order and have lived with the original agreement, with modifications, for the past nine years." There

---

[11]*Wymer v. Hutto*, 2014 Ark. App. 497, at 2, ___ S.W.3d ___, __ (citing *Singletary v. Singletary*, 2013 Ark. 506, 431 S.W.3d 234).

was no admonition that this could not be done; it was permitted by the language of the divorce decree. The court noted that the parties "made the best" of the situation "until the present." There is no evidence showing what changed. Accordingly, regarding the move itself, there has been no material change.

### B. Children's Having Matured so that School Activities and Social Interaction had Significant Importance Attributed to Them

The court found a material change in circumstances because the "children have matured to a point in their lives where their school activities and the social interaction with their classmates has become significantly more important to them than it was in 2004 when they were four and seven years old[,]" now being twelve and almost fifteen years old. It went on to state that it considered "this social interaction between young people and the activities that that social interaction revolves around . . . to be essential to the healthy development of young people" and that the children were being "deprived of an important part of their healthy development."

Of note is that if missed activities were indeed the court's issue, its new order does not resolve the issue as the children are still with appellant on the weekends, just one to two weekends less, and they are still with her during the summer, just at the beginning instead of being dispersed throughout. The new arrangement does not solve the problem because it cannot be solved.

This is an unfortunate situation, but it is not unique to this case. All divorced parents and their children—especially those with divorced parents who have a substantial physical distance between their residences—encounter numerous scheduling conflicts. Sometimes the children miss events and sometimes the parents miss events, without regard to who has

primary custody.[12] This occurs throughout the lives of the children. Missed activities are not a material change in circumstances just because the children are now old enough to care about missing them. Missed activities are simply not a material change in circumstances. Even if missed activities constituted a change in circumstance, and they do not, it would not be sufficient enough to stand as a material circumstance as it would have to since the court stated in its letter opinion that "the initial move by the respondent to Fayetteville did not significantly change the circumstances contrary to the children's best interest."

## C. Older Children

The immediately preceding argument specifically deals with the children's having become more interested in their extracurricular activities due to their "maturity." Maturity is just another word for age.[13] So essentially, that argument also alleges that there is a material change in circumstances because the children have grown older. Appellee testifies that he believed the children's "getting older" was a change that would allow the court to change

---

[12]C.K. testified that he also missed events while he was with his dad.

[13]The children, by definition, are not mature. Both children testified that they understand that they will miss out on some things, whether their mom had two weekends of visitation or four, whether they we in Mountain Home or not. C.K. testified that the "main reason[s]" he wants to change custody is because his mother yelled at him once for not having his phone, he is bored at his mom's house, cannot get a summer job, and he does not get to hang out with his friends or go to Friday night games. A.K. testified about missing parties and practices. Their reasoning for wanting to reduce their mother's visitation is not "mature." This is also evidenced by both children's testimonies that they received accommodations in their activities and neither child's recommendation for how they would like visitation to go solves their issue with missing out on social and extracurricular activities.

their custody agreement. This court has previously rejected the conclusion that a child's aging is a material change of circumstances.[14]

The mere passage of time has never been a sufficient basis for finding a material change of circumstances.[15] However, at its core, this argument is that a material change in circumstances has occurred because the children having grown older due to passage of time. This simply cannot be allowed to be a material change in circumstances.

D. *Public Policy*

We must note that there are public policy implications to finding that missed extracurricular activities are a material change in circumstances. First, we would be saying that a child's peer interaction is more in his best interest than his interaction with his parent. Secondly, we would be saying that in order to change custody, time—i.e. allowing the child to grow older—and children's preferences, together and the latter, separately, would be enough to do so. Both would be bad precedent. Peer relationships cannot be held to be more in a child's best interest than that child's relationship with a parent. Furthermore, permitting a child's preference due to passage of time to support a change of custody would permit changes in custody every time a child reached teenage years or developed a conflict with a parent, based solely on their wishes. That was the case here—appellee testified that the request to modify custody was at "C.K. and A.K.'s request[,]" not his. To permit this is bad policy.

Therefore, I respectfully dissent.
*Taylor Law Partners, LLP*, by: *William B. Putnam*, for appellant.
*Emily Reed*, for appellee.

---

[14]*Harrington v. Harrington*, 55 Ark. App. 22, 928 S.W.2d 806 (1996).

[15]*Hollinger v. Hollinger*, 65 Ark. App. 110, 986 S.W.2d 105 (1999).