

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-701

| | |
|---|---|
| CODY LEE ACKLIN | Opinion Delivered: May 17, 2017 |
| APPELLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03DR-13-198] |
| V. | |
| ASHLEN TASS ACKLIN N/K/A ASHLEN TASS GRISHAM | HONORABLE JOHN R. PUTMAN, JUDGE |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This is a domestic-relations case, and the issues on appeal involve the modification of child custody. Appellant Cody Acklin and appellee Ashlen Grisham were married in 2010. During the marriage, the parties had one child, K.A., a daughter who was born in May 2012. The parties divorced on November 6, 2013, and the parties agreed to joint custody of the child, with the parties alternating custody every three days.[1] On September 2, 2015, Cody filed a motion to modify custody, and Ashlen responded with a countermotion to modify custody. Both parties alleged in their motions that there had been a material change in circumstances and that they should be awarded primary custody of the child. After a hearing, the trial court entered an order on April 18, 2016, finding that there

---

[1]An agreed amended decree was entered on June 23, 2014, which continued the joint-custody arrangement and modified the original decree only to the extent that each party would alternate years for claiming the child on their income-tax returns.

SLIP OPINION

had been a material change in circumstances and awarding primary custody to Ashlen, subject to Cody's standard visitation.

Cody now appeals from the April 18, 2016 order that changed custody from joint custody to primary custody with Ashlen. For reversal, Cody argues that the trial court's primary-custody decision was not in the best interest of the child, and in the alternative that the trial court erred in finding that a material change of circumstances warranted modification of the parties' joint-custody agreement. We affirm.

In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the child. *Nichols v. Teer*, 2014 Ark. App. 132, 432 S.W.3d 151. We review child-custody matters de novo, but we will not reverse the trial court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999). We recognize and give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007).

Cody testified that he lives in Norfork where he has lived for the past six years. He stated that for the past twelve years he has worked in the pest-control business servicing homes. Cody remarried in May 2015. He stated that they live in a three-bedroom house on two acres in the country and that K.A. has her own bedroom.

Cody testified that the joint-custody arrangement was workable for a while, but that it was no longer working and was causing K.A. problems. Cody indicated that, since the parties' divorce, Ashlen had moved several times and that she currently lived with her new husband in Gainesville, Missouri. Cody also stated that Ashlen had changed jobs several times, and he questioned her stability. Cody indicated that he was no longer able to communicate with Ashlen about important issues involving the child.

Cody testified that on many occasions when Ashlen would transfer the child to him, K.A. would be covered in bug bites or have boils that required medical attention. He stated that he sometimes had to take K.A. to the doctor to treat her infections. He also stated that K.A. was always dirty when she was returned from Ashlen's custody. Cody testified that, when he tried to discuss K.A.'s medical issues with Ashlen, he was met with sarcasm and rudeness.

Cody testified that K.A. was enrolled in Montessori School in Mountain Home.[2] He stated that lately K.A. had been having behavior problems in school. He stated that, if he was given primary custody, he would enroll K.A. in school in Norfork. Cody's mother testified that she is a teacher at the Norfork school where Cody wants K.A. to attend.

Ashlen testified that she has remarried and that she and her husband have lived in Gainesville, Missouri, since November 2014. Ashlen is a surgery technician at Baxter Regional Medical Center, where she has worked since October 2014. Ashlen and her

---

[2]The school is located between where Cody lives in Norfork and where Ashlen lives in Gainesville, Missouri.

husband have a son, and K.A. shares a bedroom with her half-brother. Ashlen testified that K.A. loves to play with her brother and loves to be outside playing with her dog.

Ashlen acknowledged that K.A. would sometimes get bug bites or boils, but she stated that she always treated these problems and would take K.A. to the doctor when necessary. Ashlen maintained that the boils were not an everyday thing but had happened only a couple of times in the past two years. Ashlen stated that she made sure that K.A. bathed daily and was always clean.

Ashlen agreed that there was a lack of communication between her and Cody regarding the child's needs. Ashlen stated that, since Cody remarried, he has become completely difficult and they cannot get along about anything. Ashlen complained that Cody had taken K.A. to the hospital for medical problems without notifying her. Ashlen also complained that Cody would sometimes keep K.A. home from school for no reason. Ashlen stated that she has bent over backwards to try to get along with Cody and had practically begged him to get along and act like an adult, but that he refuses to cooperate and wants to shut her out.

Ashlen's mother testified that Ashlen is a very good mother and always kept K.A. clean and dressed nicely. She stated that Ashlen's house was always clean. She further testified that Ashlen took K.A. to the doctor when necessary, and that she had no concerns at all about Ashlen's ability to care for her daughter.

Patricia Morgan, K.A.'s teacher at the Montessori school, testified that K.A. always came to school clean and well dressed whether K.A. was in her mother's or father's custody. Ms. Morgan had seen no signs of neglect.

After the hearing, the trial court entered an order changing custody from joint custody to primary custody with Ashlen. The trial court acknowledged that, pursuant to Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Repl. 2015), an award of joint custody is favored in Arkansas. Nevertheless, citing *Doss v. Miller*, 2010 Ark. App. 95, 377 S.W.3d 348, the trial court stated that when parents have become unable to cooperate in sharing the physical care of a child, this constitutes a material change of circumstances affecting the child's best interest. The trial court found that the parents in this case could no longer cooperate in matters regarding K.A., and thus, that there had been a material change of circumstances.

Turning to the issue of the best interest of the child, the trial court in its order found that this was a close case and that both parents were fit to have custody of K.A. The trial court considered the factor that, unless exceptional circumstances are involved, young children should not be separated from each other by dividing their custody. *See Ketron v. Aguirre*, 15 Ark. App. 325, 692 S.W.2d 261 (1985). The trial court noted that, pursuant to our holding in *White v. White*, 2014 Ark. App. 594, 446 S.W.3d 635, this consideration does not apply with equal force in child-custody cases such as this one, where the children are half-siblings. After consideration of all the evidence presented, the trial court found that it was in K.A.'s best interest to be placed in the primary custody of Ashlen. The trial court based this decision in part on the undesirability of separating K.A. from her half-brother, the fact that Cody would have summertime visitation, which might lessen the problem with K.A.'s bug bites, and the fact that Cody testified that he was unwilling to attempt to work with Ashlen regarding K.A.

SLIP OPINION

On appeal from the trial court's order awarding primary custody to Ashlen, Cody first argues that the decision was contrary to K.A.'s best interest. Cody contends that, in reaching its decision, the trial court failed to consider that Ashlen had failed to properly care for the child's medical needs and had failed to provide a stable home environment. Cody submits that K.A. sustained an inexcusable amount of bug bites and boils while in Ashlen's custody, which demonstrated Ashlen's deficiencies in caring for the child. Cody further asserts that the trial court gave improper weight to the sibling preference given that K.A.'s brother is only her half-sibling with whom she had never lived full-time. Finally, Cody contends that the trial court erroneously found that he was unwilling to work with Ashlen regarding issues necessary to raise their daughter. While acknowledging his testimony that "at this point" he was unwilling to work with Ashlen, he asserts that when his testimony is considered in its entirety it is clear that he never meant that he was unwilling to work with Ashlen, but rather that working with her had become increasingly difficult. Noting that he has maintained the same employment and residence throughout the child's life, Cody contends that the trial court clearly erred in not finding it to be in K.A.'s best interest to be placed in his primary custody.

Alternatively, Cody argues that, if primary custody is not placed with him, we should reverse the trial court's finding of a material change in circumstances and reinstate the joint-custody arrangement. In his motion to modify custody, Cody had asserted that there was a material change in circumstances because Ashlen was unstable and had failed to properly care for K.A.'s medical issues. However, the trial court did not find a material change of circumstances on the grounds asserted by Cody, but instead found that there was a material

change based on the parents no longer being able to cooperate in matters involving the child. Cody argues that this finding of a material change in circumstances was clearly erroneous because, while there was some evidence of minor disagreements between the parties typical of a divorced couple, their level of uncooperation was not sufficient to meet the threshold requirement for changing custody.

We do not agree with either of Cody's arguments. On this record, we hold that the trial court did not clearly err in finding a material change in circumstances or in finding that it was in K.A.'s best interest to be placed in the primary custody of Ashlen.

Although our legislature has enacted a provision that joint custody is favored in Arkansas, we have held that, regardless of whether joint custody is favored, our law remains that the mutual ability of the parties to reach decisions in matters affecting a child's welfare is a crucial factor bearing upon the propriety of joint custody, and that such an award is reversible error when the cooperation between the parties is lacking. *Stibich v. Stibich*, 2016 Ark. App. 251, 491 S.W.3d 475. In the present case, there was testimony by both parties that they had reached a level of discord and lack of cooperation to constitute a material change in circumstances sufficient to change the previously agreed joint-custody arrangement. Cody testified that "I try to communicate with [Ashlen], and I can't," and stated, "[A]t this point I've gone about as far as I can go." He stated that there had been "gaggles of texts" between the parties wherein they had unsuccessfully tried to work together on matters involving the child. Ashlen agreed that they could not cooperate, stating that since Cody remarried they could not get along on anything or communicate in a civil manner. The record shows that both parties had remarried since the last order of

custody, which may be considered as a factor in a change–of–custody analysis. *See Hoover v. Hoover*, 2016 Ark. App. 322, 498 S.W.3d 297. Citing the fact that the parties could no longer cooperate in matters involving the child, the trial court found a material change in circumstances, and we cannot say this finding was clearly erroneous.

Nor did the trial court clearly err in concluding that primary custody of K.A. should be placed with Ashlen based on the best interest of the child. Although Cody claims that Ashlen failed to provide a stable environment for the child, the testimony showed that Ashlen and her new husband had lived in the same house for well over a year, and that the house was kept clean. Both Ashlen and Ashlen's mother testified that K.A. was always kept clean and that Ashlen consistently attended to K.A.'s medical needs. Although K.A. had some problems with boils, Ashlen explained that this had occurred only twice over a two-year period. The trial court did consider K.A.'s half-brother in reaching its custody determination, and the desirability of not separating the children, but this was merely one factor and the trial court correctly acknowledged that the sibling preference did not apply equally to this situation. And the trial court's finding that Cody "says he is unwilling to work with [Ashlen] regarding K.A." was consistent with Cody's testimony at the hearing. The trial court accurately noted in its order that this was a close case and that both parties are fit parents. Of particular importance was the testimony of K.A.'s teacher, an unbiased witness who testified that K.A. always came to school clean and well-dressed and that there were no signs of neglect, regardless of whose custody she was in. This testimony refuted Cody's claim that Ashlen was not properly attending to the child's needs. Considering all the evidence, and deferring to the superior position of the trial court to assess the child's

best interest, we cannot conclude that the trial court erred in awarding primary custody to Ashlen.

Affirmed.

GRUBER, C.J., and KLAPPENBACH, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Johnson, Sanders & Morgan*, by: *Robert S. Clarke*, for appellee.