DAVID M. GLOVER, Judge *902 Tiffany Matthews appeals from the trial court's December 6, 2017 order denying her motion for change of custody. She and Jeffrey Matthews were divorced by decree entered on April 14, 2015. They have three children together, ranging in age from thirteen to nine. The parties agreed, and the divorce decree provided, that they would share joint custody of the children. Tiffany's motion to change custody alleged that communications between the two had deteriorated to the point they could no longer share custody. After considering testimony of the four adults and the oldest of the children, the trial court disagreed. We affirm.
At the hearing, Tiffany testified that she and Jeffrey communicated freely and openly in the beginning, but that now they communicate only through e-mail. She explained the communication breakdown began about two years earlier when Jeffrey got a new girlfriend, Candy Ward. Tiffany testified that at first, Jeffrey asked her to communicate through Candy, but they now communicate about the children through e-mail. Tiffany read aloud an April 2015 e-mail from her to Jeffrey about an incident when one of the children was sick. She said Jeffrey e-mailed her back, stating, "This is not an emergency. Leave me alone and stop emailing me." She explained Jeffrey's position was that unless there was a medical emergency, he wanted her to leave him alone. She described his parenting preference for "parallel parenting," a very "walled-off" thing. She described several instances when the children had left personal items at Jeffrey's house, and she said it caused stress for the children because she could not contact Jeffrey to retrieve the items. She testified the children told her recently Jeffrey did not want items from his house to go to Tiffany's, and vice versa. She said Jeffrey changed his phone number and then told her to contact Candy if she needed him; Candy's phone number was the number provided to her.
Tiffany disclosed that she married her wife, Tiffany Bonds, in February 2016 and that Bonds has good interaction with the children and helps them with school work. She also said the deterioration of communication between her and Jeffrey had negatively affected the children. She believed she should have primary custody, and Jeffrey should be involved in their lives and have plenty of visitation. Tiffany acknowledged the children were doing well in school. She said, however, the kids had told her it was not an option for them to call her while they were with Jeffrey; one child told her she fears how Jeffrey will react if she shows affection to Tiffany at games when they are with him.
Tiffany Bonds testified she is general manager at Chick-fil-A and has worked there over nine years; she has a business degree from UCA. She was present when Candy attacked Tiffany Matthews. She also described Jeffrey as being angry frequently.
Jeffrey testified he was not under an obligation to co-parent or take co-parenting courses; co-parenting was not discussed prior to the decree and the decree did not include it. He described "parallel parenting" as "when you have two parents in a joint custody situation where they love their children, but the idea of being 'friendly' and showing up at each other's house isn't something that is able to be done." He described the incidents involving the children forgetting their personal items and being unable to retrieve them from his house and his discipline of BM by not allowing him to play ball; he acknowledged not letting the children contact Tiffany when they were with him. He said he wants the communication to be in a controlled environment with respect to each of their new relationships. He stated he wanted to keep joint custody but was open to modification about ways to facilitate better communication. Jeffrey acknowledged Tiffany was justified in assuming she could go to his house without him being there before the bathing incident but said she should have left when asked to do so. He also acknowledged denying BM access to his sporting equipment to teach Tiffany about the boundaries set by him and Candy.
Jeffrey acknowledged the decree stated they had to keep each other informed of medical treatment, school discipline, and other matters. He said Tiffany had tried to keep him informed of the children's health and educational matters, and he had delegated to Candy the responsibility to communicate with Tiffany. He has no problems with Tiffany Bonds living with his ex-wife, Tiffany, and caring for the children. He said the e-mails sent by Tiffany were excessive.
We review child-custody matters de novo, but we will not reverse a trial court's findings unless they are clearly erroneous. Doss v. Miller , 2010 Ark. App. 95, 377 S.W.3d 348. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. Id. Because the question whether the trial court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. Id.
In determining whether a change in custody is warranted, the trial court must first determine whether there has been a material change in circumstances since the most recent custody order. Acklin v. Acklin , 2017 Ark. App. 322, 521 S.W.3d 538. If that threshold requirement is met, the trial court must then determine who should have custody with the sole consideration being the best interest of the child. Id.
Joint custody is now favored in Arkansas. Ark. Code Ann. § 9-13-101(a) (Repl. 2015). However, we have recognized that *905 when parents become unable to cooperate in sharing the physical care of a child, this constitutes a material change of circumstances affecting the child's best interest. Acklin, supra.
In reviewing this case, some of the testimony gives us pause for a joint-custody arrangement. At one point, Jeffrey saw no need or desire to communicate directly with Tiffany about the children, regardless of whether they were with him or her; instead, he delegated that role to Candy, his girlfriend. Neither did he promote an easy flow between the two houses concerning the children's personal items and needs. Likewise, his rejection of "co-parenting" and embracing of "parallel parenting" is not representative of ideal joint-custody arrangements.
The trial court, though, found there was not sufficient change in circumstances to warrant changing the parties' present, agreed-upon joint-custody arrangement. The court further found that any proposed change in custody would not be in the best interest of the parties' minor children. Critical to its decision, the trial court cautioned both parents, finding both were "at fault in their dealings with each other, and both parties have occasionally allowed their animosity for the other to adversely affect their judgment as it relates to issues with the children." The trial court further stated clearly its "expectation that the parties understand the importance of positive communication with each other regarding the children and their welfare," and directed the parties to tailor their actions to such standards. We interpret the court's "expectation" to be that the parties communicate directly with each other about the children, and not through a third person.
Combining the trial court's directives to the parties, the trial court's superior position to evaluate the witnesses and the children's best interest, Jeffrey's stated willingness to develop a different type of communication with his ex-wife and the mother of his children, and the statutory preference for joint-custody arrangements has helped to alleviate our concerns about these parties successfully implementing joint custody for their children. Thus, while we are troubled by Jeffrey's approach to "joint custody," we are not left with a definite and firm conviction the trial court made a mistake in finding there had not been a sufficient change in circumstances to warrant a change in the joint-custody arrangement, or that it would not be in the children's best interest to do so. In a joint-custody arrangement, communication about the children is to be between the parents-it cannot be predominantly delegated to a third party; communications between the children and either parent should be fostered by both parents at all times; and the relationships that are to be fostered the most are those between the parents and the children. The best interest of the children should always be paramount. We affirm the trial court.
Affirmed.