Cite as 2020 Ark. App. 60

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.**  CV-18-865

|  |  |
|---|---|
|  | **Opinion Delivered:**  January 29, 2020 |
| STACY DONALD ROBERTS<br>APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-13-1025] |
| V. |  |
|  | HONORABLE ELLEN BASS BRANTLEY, JUDGE |
| KENDRA CHRISTY ROBERTS<br>APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This is a domestic-relations case, and the issues on appeal involve the modification of child custody. Appellant Stacy Roberts and appellee Kendra Roberts were married and have two children together—a daughter, K.R., now fifteen years old, and a son, B.R., now nine years old. The parties were divorced on May 28, 2014, and the divorce decree awarded the parties joint custody of the children on a three-day/two-day/two-day basis alternating each week.

On May 8, 2017, Stacy filed a motion to modify custody where each party would have alternating full-week custody with the children. On July 14, 2017, Kendra filed a motion for primary custody of the children, alleging numerous material changes in circumstances and asserting that primary custody with her was in the children's best interest. The parties also filed cross-motions for contempt, alleging that the other party had violated various provisions of the prior orders of the court. After a hearing on these motions, the

trial court entered an order on August 17, 2018, finding that there had been a material change in circumstances and awarding primary custody to Kendra, subject to Stacy's weekend visitation.[1]

Stacy now appeals from the August 17, 2018, order that changed custody from joint custody to primary custody with Kendra. For reversal, Stacy argues that the trial court erred in finding a material change in circumstances and in finding that a change in custody was in the children's best interest. We affirm.

In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody with the sole consideration being the best interest of the children. *Nichols v. Teer*, 2014 Ark. App. 132, 432 S.W.3d 151. We review child-custody matters de novo, but we will not reverse the trial court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* We recognize and give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the children's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007).

Stacy testified that the three-day/two-day/two-day joint-custody arrangement previously ordered by the trial court had become cumbersome for the children. He thought that it would be better for the children to be on a more regular joint-custody schedule

---

[1]The trial court also found each party in contempt of the court's previous orders, but no sanctions were given because "any contempt provisions would be offset." The trial court's contempt findings are not at issue in this appeal.

where each party would exercise alternating full-week custody. Stacy further indicated that the communication between the parties, which was through a website called "2houses," had become difficult under the current arrangement.

Stacy noted in his testimony that sometime after the divorce decree was entered, the trial court entered a no-contact order prohibiting the parties from coming within 100 feet of each other. Stacy stated that Kendra had violated this order at a school play while Stacy had custody of the children. Stacy stated that Kendra was in attendance at the play, came over to where he was sitting, and tried to coax the children into sitting with her.

Stacy indicated in his testimony that there had been considerable acrimony between the parties since their divorce. He acknowledged that during their communications on 2houses he had called Kendra derogatory names such as "bitch," "idiot," and "fat ass." Stacy further stated that the parties had been to court many times since their divorce and that "it's hard to live life when every day I worry about what's going to be filed next." Stacy testified that he "can't stand" Kendra and indicated that he has no respect for her.

Stacy testified that he has remarried since the parties' divorce but that he and his new wife were having marital problems and were going to counseling in an attempt to avoid a divorce. Stacy stated that his wife gets "hormonal during her periods," at which time she gets easily upset and "yells and gripes." Stacy acknowledged one occasion in which both he and his wife were engaged in a physical altercation and called 911 on each other. On that occasion, Stacy told the 911 operator that his wife "tried to rip [his] f---ing arm off." Stacy stated that his wife was charged with assault but that the assault charge was later dismissed at his request.

3

Kendra testified that in her dealings with Stacy about issues involving the children Stacy was often unresponsive or uncooperative. Kendra described their communications as "very volatile" and stated that, more times than not, Stacy responded to her rudely and negatively and called her names. Kendra indicated that Stacy is argumentative and demeaning, and she stated that their communication problems keep getting worse. Kendra also stated that on one occasion at her son's basketball game, Stacy violated the 100-foot no-contact order when he approached her and called her a bitch in front of her son and other family members. Kendra thought that it was in their children's best interest for Stacy to "just communicate appropriately with [her] and leave out all this negative stuff."

Kendra testified that Stacy was not providing a stable environment for their children due to Stacy's volatile relationship with his new wife. Kendra stated that the police had been called to Stacy's home several times while the children were present. Kendra also indicated that her daughter has problems with Stacy's wife and is very uncomfortable with her.

After the hearing, the trial court entered an order changing custody from joint custody to primary custody with Kendra. The trial court found that there had been a material change in circumstances due to (1) Stacy's remarriage, which creates a tumultuous and unstable environment for the children; (2) Stacy's proneness to fits of anger; and (3) the increasing nature of the discord between the parties. The trial court further found that it was in the children's best interest to be placed in the primary custody of their mother.

On appeal from the trial court's order awarding primary custody to Kendra, Stacy first argues that the trial court clearly erred in finding that there had been a material change

4

in circumstances. In particular, Stacy contends that it was error for the trial court to conclude that his remarriage constituted a material change. For this proposition, Stacy relies on *Jones v. Jones*, 326 Ark. 481, 931 S.W.3d 767 (1996). In that case, the noncustodial father claimed that he had *improved* his life because of a recent remarriage, and he sought primary custody of the children. The supreme court in *Jones* held under the facts in that case that the father had not proved a material change in circumstances, reasoning that he could not use the circumstances he created as grounds to modify custody.

Under this point, Stacy also states that nothing material has changed since joint custody was awarded. Stacy claims that his remarriage has caused no problems or changes for the parties' children and that Kendra failed in her burden to prove a material change.

Alternatively, Stacy argues that the trial court clearly erred in finding that it was in the children's best interest to change the joint-custody arrangement to primary custody with Kendra. Stacy cites Arkansas Code Annotated section 9-13-101(a)(1)(A)(iii) (Repl. 2015), which provides that joint custody is favored in Arkansas. Stacy contends that although there was evidence that the parties exhibited poor conduct toward one another, there was a lack of evidence that the children were negatively affected.

We do not agree with either of Stacy's arguments. On this record, we hold that the trial court did not clearly err in finding a material change in circumstances or in finding that it was in the children's best interest to be placed in Kendra's primary custody.

In *Hoover v. Hoover*, 2016 Ark. App. 322, 498 S.W.3d 297, we stated that although remarriage alone is not a sufficient reason to change custody, it may be considered as a factor in a change-of-circumstances analysis. There was evidence that during Stacy's remarriage

there have been physical altercations between Stacy and his new wife, which created a tumultuous and unstable environment for the children. In addition to Stacy's frictional marriage, there was evidence that Stacy and Kendra's relationship had devolved into discord and a lack of civil communication on matters affecting the children's welfare. Although our legislature has enacted a provision that joint custody is favored in Arkansas, we have held that regardless of whether joint custody is favored, our law remains that the mutual ability of the parties to reach decisions in matters affecting a child's welfare is a crucial factor bearing on the propriety of joint custody. *Acklin v. Acklin*, 2017 Ark. App. 322, 521 S.W.3d 538. In the present case, there was evidence that the parties had reached a level of discord and lack of cooperation to constitute a material change in circumstances sufficient to change the joint-custody arrangement. Kendra described their communications as "very volatile," and the parties' animosity toward each other was substantial enough to warrant the imposition of a 100-foot no-contact order. Citing the fact that Stacy's remarriage had created an unstable atmosphere for the children, as well as the elevated degree of discord between the parties since they divorced, the trial court found a material change in circumstances. We cannot say that this finding was clearly erroneous.

Nor did the trial court clearly err in finding that primary custody should be placed with Kendra based on the best interest of the children. In making its best-interest determination, the trial court considered Stacy's tumultuous remarriage and his anger issues, which were manifested in his inappropriate communications with Kendra. Considering all the evidence and deferring to the superior position of the trial court to assess the children's

best interest, we cannot conclude that the trial court erred in awarding primary custody to Kendra.

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*T. Clay Janske*, for appellant.

One brief only.