2011 Ark. App. 308

**Adam S. STIBICH, Appellant**

v.

**Kimberly R. STIBICH, Appellee.**

**No. CA 09–1411.**

Court of Appeals of Arkansas.

April 27, 2011.

Stephanie Angel Chamberlin, Little Rock, for appellant.

Cynthia Satterfield Moody, Little Rock, for appellee.

ROBIN F. WYNNE, Judge.

Adam S. Stibich appeals from a decree of divorce entered by the circuit court in which the court granted custody of the parties' minor children to Kimberly R. Stibich. Adam argues that the circuit court clearly erred in granting custody to Kimberly and that the circuit judge was biased against him. We affirm the decision of the circuit court.

The parties were married in 1998. The marriage produced two children, S.S. and A.S. Kimberly filed for divorce in 2007. At the time Kimberly filed for divorce, S.S. was three years old and A.S. was eight months old. In her complaint for divorce, which was filed on May 18, 2007, Kimberly requested that the circuit court grant her custody of the children, subject to reasonable visitation by Adam. Also on May 18, 2007, Kimberly filed a petition for emergency ex parte relief in which she alleged that Adam was mentally and physically abusive during the marriage and that Adam had threatened to take the children

away from her. Kimberly requested that the court enter an emergency order granting her temporary custody of the children and exclusive use of the marital residence. The circuit court entered an order granting Kimberly temporary custody of the children that same day.

On May 21, 2007, Adam filed a petition to dissolve the emergency ex parte order. In the petition, Adam requested that he be given exclusive use of the marital residence. He did not request that he be granted custody of the children. On May 31, 2007, Adam filed an amended answer to Kimberly's complaint and a counterclaim in which he did request that he be granted custody of the children. At the hearing on Adam's petition to dissolve the emergency ex parte order, he testified that he had not done anything to Kimberly that would cause her to be concerned for her safety. He denied that there was any threat of violence around the time Kimberly filed her petition for emergency ex parte relief. Kimberly testified that Adam had never been the primary caregiver for the children. She testified that Adam has hit her in the head and slammed her down. Kimberly testified that on January 17, 2004, Adam repeatedly pulled her from the home by her feet while she was holding their infant child. The circuit court dissolved the emergency order in an order entered on September 10, 2007.

The circuit court entered a temporary consent order on July 2, 2008, in which Kimberly was given sole use and possession of the marital residence, as well as custody of the children subject to visitation by Adam. The agreement was to last six weeks or until Adam complied with the conditions set in a diversion agreement reached after Adam was charged with assault in the third degree on a family or household member. Adam filed a motion to terminate the temporary consent order on September 5, 2008. At the hearing on the motion, Kimberly testified regarding an incident during which she claimed Adam broke a tennis racket in the presence of herself and a friend. She also testified that Adam had threatened and harassed her since the temporary order was entered. Kimberly testified that Adam beat her up on Thanksgiving in 2007 and in February 2008. Kimberly stated that Adam has a problem with alcohol and that his personality changes when he drinks. Kimberly admitted that she signed an affidavit under oath that Adam did not abuse her but claimed that it was an effort to protect Adam professionally and to protect the family. Kimberly requested that the consent order be extended.

Maggie Owens testified that she had babysat the parties' children once or twice a week for the past year. Owens testified to an incident in September in which Adam showed up at the house with "glossy" eyes and smelling of alcohol. Owens called the police because Adam was not allowed to be at the home. Owens admitted she had seen Adam intoxicated prior to that night but denied that she had seen him behave in a violent or angry way. Owens testified that Adam is her doctor.

Adam testified that he complied with the provision of the temporary consent order. Adam denied ever physically abusing Kimberly. Adam denied having a problem with alcohol. The circuit court denied Adam's motion to terminate the temporary order and kept the order in effect pending a final hearing.

On April 24, 2009, Kimberly filed a motion for emergency ex parte relief in which she requested that the circuit court suspend Adam's visitation based upon allegations of illegal drug use. Kimberly attached to the motion an affidavit from Delta Queen, an employee of the attorney

ad litem assigned to the case at that time. In the affidavit, Ms. Queen states that she spoke with Adam by telephone on April 24, 2009, after which Adam apparently called the number back accidently. Ms. Queen then heard a conversation between Adam and another individual, the contents of which led Ms. Queen to conclude that Adam was using illegal drugs during the call. The circuit court suspended Adam's visitation and ordered him to submit to hair-follicle, blood, and urine drug screens. Adam moved to dissolve the order after submitting to drug tests that were negative. The circuit court found that Adam had negated the allegation of drug use and reinstated his visitation.

At the hearing on Kimberly's complaint for divorce, Dr. Karl Wagenhauser testified that he had seen Adam drink at home around his children and that he had seen Adam drink at home to the point that he appeared impaired. Sara Wilhite, the preschool coordinator at S.S.'s school, testified that S.S. was in her classroom from August 2008 to August 2009. Ms. Wilhite testified that S.S. has delays in communication and social skills. Ms. Wilhite further testified that she had contact with Kimberly almost every day, that she saw Adam five or six times, and that S.S. appeared to be well cared for. She had not seen anything that would give her concern regarding either parent's ability to care for S.S. Another teacher at the school, Angie Pennington, testified that she also had no concerns with either parent. Delta Queen gave testimony that matched the contents of her April 24, 2009 affidavit. On cross-examination, Ms. Queen admitted to previous methamphetamine use.

Judy McDonald, who was Kimberly's OB/GYN during her pregnancy with S.S., testified that Adam exhibited controlling behavior during Kimberly's pregnancy and delivery. Dr. McDonald testified that she had seen Adam on three or four social occasions and that he was intoxicated each time. When Dr. McDonald had seen Kimberly with the children, Kimberly was very loving toward them. Dr. McDonald stated that Kimberly told her she did not drink during her pregnancy with S.S. She further testified that Kimberly expressed concerns about drug use by Adam.

Deanna Horner testified that Kimberly is the primary caregiver and is an "excellent mom." She also stated that Adam was good with the children. Ms. Horner testified that she called the police in July of the previous year when Adam came to the home after he had been drinking, became angry, and smashed a tennis racket. Ms. Horner stated that she had never seen Kimberly consume more than two or three beers around the children. She admitted on cross-examination that she had a number of problems with drinking herself in the past and that she had previously been arrested for terroristic threatening.

Kimberly testified that she quit working in 2006 when she was pregnant with A.S. Kimberly denied interfering with Adam's visitation. She further denied leaving her children with babysitters. She admitted on cross-examination that she had occasional activities that warranted leaving the children with a babysitter. The children also attended a Mothers' Day Out program two days a week. According to Kimberly, she has been the primary caregiver for the children, and Adam was away from home a lot on the weekends. Kimberly testified that she would find random pills in Adam's pants pockets. Kimberly denied drinking during her pregnancy with S.S. She also denied ever having been diagnosed with a mental disorder. Kimberly stated that she filed two domestic-abuse petitions against Adam in Garland County, one in 2004 and another in 2008.

She also accused Adam of domestic abuse while they lived in New Jersey.

Sara Stough, an independent contractor who does work for Adam's clinic, testified that she had seen Kimberly drink during a pregnancy. She testified that when Adam would interact with his children at the clinic, he showed the utmost responsibility and concern for their well-being. Travis Graves, a retired police officer, testified that he saw Kimberly intoxicated at a local nightclub.

Dr. Scott Erwin testified that he had seen Kimberly and Adam get into arguments, but he never saw either of them get into a physical altercation. Dr. Erwin stated that Adam was an active and caring father. Dr. Erwin testified that he saw Kimberly drink while she was pregnant with S.S. Adam told Dr. Erwin that he had pushed Kimberly away before but never hit her or slapped her. Dr. Erwin testified that the results of Adam's drug tests were negative.

Bradley Blacketer testified that he lived with the parties during the summer of 2005. During that time he saw both parties drink and argue, but he never saw any physical violence. Mr. Blacketer testified that Adam did the majority of caring for S.S. Mr. Blacketer described |₇Kimberly as a very poor mother who has always been more concerned with herself. Mr. Blacketer testified on cross-examination that Adam loaned him $10,000 and that he felt indebted to Adam for that.

Larry Keys testified that he has never known Adam to use drugs. Mr. Keys stated that he was with Adam on April 24, 2009, and they were fishing. He denied that Adam was using drugs that day. Mr. Keys testified that Adam is a good father. He denied seeing either party become physically violent with the other. Mr. Keys admitted that his wife received a $25,000 check from Adam the previous year, but he stated that he did not know what it was for. Shirley Keys, Larry Keys's wife, testified that she was out with Adam and the children during one of Adam's visitation times when Kimberly drove up beside them and swerved into their lane. Kimberly admitted that she swerved into their lane but claimed that she did not intend to do so. Mrs. Keys admitted that Adam loaned her $25,000.

Bruce Dodson, the parties' therapist, testified that Kimberly told him she did not drink while she was pregnant. Mr. Dodson stated that he recognized the following traits in Adam: passive-aggressiveness, control, and a need for affirmation. He recognized the following traits in Kimberly: anger, anxiety, and impulsivity. Mr. Dodson testified that he inferred from a session that Adam had previously slapped Kimberly. Both parties expressed concern with the other's drinking, and Adam expressed concern that Kimberly spent more time on her personal life than parenting.

|₈Michelle Holiday testified regarding an incident in which Adam cursed and yelled at Kimberly. According to Ms. Holiday, Adam had been drinking prior to the incident. She testified that she had never seen Kimberly neglect the children. She further testified that she had been around Adam close to 100 times and every time he drank excessively.

James Grisham testified that Adam has a good relationship with his children. Mr. Grisham stated that he saw Kimberly drink during both of her pregnancies. Mr. Grisham testified that his wife works for Adam's clinic.

Adam denied ever choking or beating Kimberly. He testified that Kimberly will have rages so severe that she foams at the mouth. He stated that Kimberly has called the police six or seven times since

the divorce complaint was filed and that she called the police one time prior to the filing of her complaint. Adam denied ever using drugs. Adam expressed concern that Kimberly was more concerned with her activities than the children. He stated that he tries to be as instrumental in the children's lives as he can.

On September 4, 2009, the circuit court entered a decree of divorce in which it granted custody of the children to Kimberly and visitation to Adam. On October 5, 2009, Adam filed a notice of appeal from the decree. The circuit court entered a supplemental decree on November 30, 2009. The supplemental decree does not pertain to the issue of custody of the children. Kimberly filed a cross-appeal on December 29, 2009. The cross-appeal has since been dismissed on Kimberly's motion.

Adam's first point on appeal is that the circuit court clearly erred in awarding custody of the children to Kimberly. We review child-custody cases de novo, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 77, 110 S.W.3d 731, 735 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Piccioni v. Piccioni*, 2011 Ark. App. 256, at 2, 2011 WL 1316150. Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 44, 256 S.W.3d 528, 529 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties

carry as great a weight as those involving minor children. *Judkins v. Duvall*, 97 Ark. App. 260, 267, 248 S.W.3d 492, 497 (2007).

Adam spends the vast majority of his argument refuting the allegations of spousal abuse levied by Kimberly. He does not present any evidence indicating that Kimberly failed to properly care for the children during the marriage. Nor does Adam present evidence indicating that the children were not doing well at the time of the hearing or that they had not done well while in Kimberly's custody after the couple separated. Based upon the record before us, we cannot say that the circuit court clearly erred in granting custody to Kimberly.

Adam's second point on appeal is that the trial court was biased against him and its decision to award custody to Kimberly was impermissibly designed to punish him. A judge is presumed to be impartial. *City of Dover v. City of Russellville*, 346 Ark. 279, 285, 57 S.W.3d 171, 174 (2001). The party seeking to prove otherwise must demonstrate bias. *Bradford v. State*, 328 Ark. 701, 705, 947 S.W.2d 1, 3 (1997). In attempting to demonstrate bias, Adam points to the fact that his visitation was suspended when he was accused of drug use. However, his visitation was later reinstated after he submitted to the required drug tests. Adam also argues that the trial court entered an ex parte order on May 28, 2009, solely based upon an allegation by Kimberly that he took a vehicle that was in her possession. Our review of the motion for emergency ex parte relief that resulted in the May 28, 2009 order reveals that Kimberly also alleges that Adam failed to provide the results of his court-ordered drug tests and that he engaged in actions that caused her to fear for the safety and welfare of herself and the children. Adam further argues

that the orders in which the trial court suspended his visitation were entered to punish him because the orders never mention that the actions were taken because they were in the best interest of the children. We note that, despite the fact that Adam points to several instances prior to the final hearing that he claims clearly show the trial judge was biased against him, he never requested that the trial judge recuse. Adam has failed to demonstrate bias on the part of the trial judge.

Adam has filed before this court a motion for judgment on appeal. Adam has also filed a motion and amended motion for order authorizing and requiring trial court to finally and fully resolve all claims currently pending and viable between the parties and a renewed motion for sanctions against Kimberly and her counsel. These motions are hereby denied.

Affirmed; motions denied.

ABRAMSON and BROWN, JJ., agree.