

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-949

| | | |
|---|---|---|
| KIMBERLY STIBICH | | **Opinion Delivered:** May 4, 2016 |
| | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. DR-207-457] |
| V. | | |
| ADAM STIBICH | | HONORABLE RUSSELL ROGERS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**CLIFF HOOFMAN, Judge**

This is a domestic-relations case involving former spouses, Kimberly Stibich and Adam Stibich.[1] This appeal follows particularly contentious postdecree litigation. In total, the circuit court presided over twenty days of trial and more than 200 motions, countermotions, and various other requests for relief. On appeal, Kimberly challenges several of the circuit court's decisions relating to custody, child support, property division, and the award of attorney's fees. We affirm in part and reverse and remand in part.

## I. *Facts*

Kimberly and Adam married in May 1998 after entering into a prenuptial agreement. Two children were born of the marriage; S.S. on October 28, 2003, and A.S. on September 6, 2006.

---

[1] The current appeal returns to this court after our previous order for rebriefing. *See Stibich v. Stibich*, 2015 Ark. App. 369.

In May 2007, Kimberly filed for divorce from Adam. In September 2009, the circuit court entered a decree of divorce awarding custody of the parties' children to Kimberly. The decree also required Adam to pay temporary child support in the amount of $10,000 per month until the circuit court could make a final ruling regarding the amount of child support he was obligated to pay.[2] This decree did not dispose of the parties' property and debt issues. Adam filed an interlocutory appeal of the circuit court's custody ruling pursuant to Arkansas Rule of Appellate Procedure–Civil 2(d), and this court affirmed.[3] *See Stibich v. Stibich*, 2011 Ark. App. 308, 378 S.W.3d 906.

Following this court's decision on the interlocutory appeal, the parties began litigating a litany of issues. This impetus for the renewed litigation came from Adam's filing of a motion for contempt, a motion for psychological evaluation, a motion to change custody, and a motion to reduce his child-support obligation four days after the entry of the circuit court's November 30, 2009 supplemental decree. Additionally, the circuit court had yet to dispose of all of the parties' property and debt.

The litigation that followed was lengthy and difficult and focused primarily on issues related to the custody of the parties' children, child support, and the distribution of marital property. Ultimately, the circuit court entered a thorough and exhaustive final order wherein it undoubtedly put forth great effort to ensure that it provided this court with a

---

[2] On November 30, 2009, the circuit court entered a supplemental decree ordering Adam to pay $15,057.98 per month in child support.

[3] Adam inexplicably devotes ten pages of his argument on appeal to disputing the propriety of decisions reached in the interlocutory appeal. These issues are not currently before this court, and we will not address them further.

clear understanding of its decisions and a final order that fully disposed of all pending issues. In it, the circuit court awarded the parties joint custody, retroactively reduced Adam's child support to $8,047 per month, found that Adam owed Kimberly for child-support arrearages, terminated Adam's current child-support obligation, fully disposed of the parties' marital property issues, and awarded Adam $15,000 in attorney's fees. This timely appeal by Kimberly followed.

Kimberly raises several arguments on appeal. Kimberly contends that the circuit court erred (1) by awarding the parties joint custody of their two children, (2) by terminating Adam's child-support obligation upon the award of joint custody, (3) by deciding to offset money Adam owed her for child-support arrearages with money she owed him, (4) by requiring her to reimburse Adam for payments he made on behalf of the parties from 2007 to 2009, and (5) by awarding Adam $15,000 in attorney's fees.

## II. *Custody and Child Support*

For her first point on appeal, Kimberly challenges the circuit court's decision to modify its previous custody decision and award the parties joint legal custody of their two minor children. This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999). We recognize and give special deference to the superior position of a circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark.

App. 42, 256 S.W.3d 528 (2007).  For a circuit court to change custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree and then determine that a change in custody is in the best interest of the children.  *Lewellyn v. Lewellyn*, 351 Ark. 346, 355, 93 S.W.3d 681, 686 (2002).

First, we consider whether the court erred in determining there had been a material change in circumstances to warrant a change in custody.  In concluding that there had been a material change in circumstances, the circuit court indicated that its main consideration was Kimberly's "overall lack of judgment subsequent to the divorce."  In its letter opinion, the court outlined several examples of Kimberly's lack of judgment including,

(1)     Ms. Stibich just being with a person like J. Davidson[4] under any circumstances, caused me concern, let alone living with him and having sex in front of the children.
(2)     Unreasonableness regarding visitation.
(3)     Not informing the defendant of matters involving the children.
(4)     Damage to property.
(5)     Keeping property to which she was not entitled.
(6)     Stalking.
(7)     The plaintiff's allegations to OCSEU, the Prosecuting Attorney, various elected officials, and most importantly, to the State Medical Board, of which at least most were false but all were malicious.
(8)     Alcohol habits.
(9)     Spending habits.
(10)    I have serious concerns about her credibility formed during testimony and demeanor through over twenty days of trial, as well as her inability and/or unwillingness to answer most questions.

The court also indicated that it considered the findings and recommendations of Dr. Virginia Krauft, an expert appointed by the court to perform a psychological evaluation of the parties, and Bruce Dodson, a licensed professional counselor who provided marriage counseling to

---

[4] Kimberly's former boyfriend and a witness for Adam.

the parties and then counseled Kimberly following the divorce.

The circuit court is in a superior position to evaluate witnesses and their testimony, and we give great deference to the circuit court's findings. *Sharp*, *supra*. Here, the circuit court made numerous factual findings to support its conclusion, and many of those findings regarding Kimberly's lack of judgment would directly affect the children. It is apparent from the evidence and the circuit court's letter opinion that the court found that the parties' difficulties had substantially worsened since the previous custody determination. We cannot say that the circuit court erroneously concluded that a material change in circumstances had occurred.

With this determination made, we direct our review to whether the circuit court erred by ordering the parties to share joint custody. In reviewing the award of joint custody, we recognize that our law regarding joint custody has recently changed. In 2013, our legislature amended Ark. Code Ann. § 9-13-101 to provide that an award of joint custody is favored in Arkansas. Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Repl. 2015). This is a departure from prior case law holding that joint custody is not favored unless circumstances clearly warrant such action. *Gray v. Gray*, 96 Ark. App. 155, 239 S.W.3d 26 (2006). Regardless of whether joint custody is favored, our law remains that "the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is reversible error where cooperation between the parents is lacking." *Id.* at 157–58, 239 S.W.3d at 29 (citing *Word v. Remick*, 75 Ark. App. 390, 395–96, 58 S.W.3d 422, 426 (2001)).

One must look no further than the circuit court's letter opinion regarding custody to be left with a firm conviction that a mistake was made. The letter opinion provides that the parties' "unwillingness to agree on *anything*" led to the length of this case. (Emphasis in original.) The letter opinion further provided that the court "was not optimistic about any agreements being reached" regarding visitation. The court later mentioned the parties' "inability to agree on anything" and their "unwillingness to agree on anything and to fight about even the most insignificant matters." Finally, the amended final order and judgment provides, "[i]f the parties feel that the Court is not at all confident that the parties will set aside their personal differences and work together for the best interest of the children, they would be absolutely correct."

It is contrary to the best interest of the children to award joint custody to parents who cannot cooperate—particularly when cooperation is lacking on matters pertaining to the care and upbringing of the children. After a de novo review, it is abundantly clear that Kimberly and Adam do not possess the willingness and ability to cooperate in reaching shared decisions regarding their children. We are left with a firm conviction that the circuit court made a mistake when it concluded that joint custody was proper. Accordingly, we reverse the circuit court's award of joint custody and remand this case to the circuit court for an award of custody based on its determination of the best interest of the children.

With the child-custody award reversed and remanded, we do not reach the merits of Kimberly's arguments against the termination of Adam's child-support obligation. The issue of current child support must also be remanded to the circuit court. *See Doss v. Miller*, 2010 Ark. App. 95, 377 S.W.3d 348.

SLIP OPINION

III.    *The Offset*

During the course of the proceedings, the circuit court determined that Adam owed Kimberly $56,133.30 for child-support arrearages; the circuit court also found that Kimberly owed Adam $214,180.47 for various debts.   The court offset the amount Adam owed in child-support arrearages against the amount Kimberly owed him.   This offset resulted in Adam owing Kimberly nothing and Kimberly owing Adam $158,047.17.   Kimberly finds fault with the circuit court's decision to offset Adam's child-support arrearages against the money she owed him.

A child-support judgment is subject to the equitable defenses that apply to all other judgments.  *Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993).   In a proper case, an equitable defense may apply to prevent the collection of past-due child-support payments.  *State Office of Child Support Enf't v. Mitchell*, 61 Ark. App. 54, 964 S.W.2d 218 (1998).   Our case law provides that offset is an equitable defense.  *Walker v. First Commercial Bank, N.A.*, 317 Ark. 617, 880 S.W.2d 316 (1994).   Adam properly raised the defense of offset in his pleadings, and the circuit court accepted it as an equitable defense to his child-support arrearage.   Faced with the large sum of money Kimberly owed Adam and Kimberly's lack of income, we cannot say that the trial court erred in awarding an offset.   Accordingly, we affirm on this point.

IV.    *Division of Property*

Kimberly also challenges the circuit court's division of some of the parties' marital debt.  Specifically, she contends that the circuit court erred when it ordered that she be responsible for reimbursing Adam $128,940.81—this figure represents the payments he

made toward a mortgage held by Simmons Bank on the marital home. With respect to the division of property in a divorce case, we review the court's findings of fact and affirm them unless they are clearly erroneous or clearly against the preponderance of the evidence. *Weatherly v. Weatherly*, 87 Ark. App. 291, 190 S.W.3d 294 (2004).

Kimberly argues that the parties' July 2008 temporary consent order requires that Adam be responsible for this debt. In the temporary consent order, Adam agreed to be solely responsible for all of the parties' monthly payments on the mortgage indebtedness, lines of credit, revolving credit, or any other loans that were outstanding in the parties' names during the pendency of this matter. However, the temporary consent order also provided that it was "not a final adjudication as to debt responsibility."

At the time of the entry of the temporary consent order, the validity of the parties' prenuptial agreement was in dispute. The prenuptial agreement, if valid, governed the disposition of the parties' property and provided that, in the event of divorce, any jointly titled real estate would remain in Adam's possession and that neither party could seek maintenance from the other. Ultimately, the circuit court found that the prenuptial agreement was valid in an order for partial summary judgment entered in September 2009. In that order and pursuant to the terms of the prenuptial agreement, the circuit court ordered that all maintenance to Kimberly cease. The circuit court also recognized that Kimberly received the benefit of the use of the marital home without having to pay for it, which was in contravention of the terms of the parties' prenuptial agreement. As such, the court reserved for adjudication the issue of reimbursement of maintenance already paid to

Kimberly by Adam. Her argument that the July 2008 consent order governs the allocation of the Simmons mortgage indebtedness is without merit.

Additionally, Kimberly did not present evidence to dispute the evidence regarding the amounts Adam paid on her behalf. Leila Newkirk-Davis, a court-appointed expert, testified regarding the amount of money Adam paid toward the indebtedness on the marital home while Kimberly was in possession of the home. Kimberly did not object to or contradict Ms. Newkirk-Davis's testimony, and the circuit court ultimately adopted Ms. Newkirk-Davis's figures and ordered that Adam was entitled to reimbursement from Kimberly for an amount equal to the reduction in principal on the indebtedness due on the marital home. Accordingly, the circuit court's decision was not clearly erroneous.

## V. *Attorney's Fees*

For her final point on appeal, Kimberly disputes the propriety of the circuit court's decision to award Adam $15,000 in attorney's fees. In her appellate brief, Kimberly contends that the award of attorney's fees impermissibly violated the terms of the parties' prenuptial agreement. However, Kimberly never raised this argument at trial. Arguments not raised at trial will not be addressed for the first time on appeal, and parties are bound on appeal by the scope and nature of the objections and arguments they presented at trial. *Rudder v. Hurst*, 2009 Ark. App. 577, at 13, 337 S.W.3d 565, 574. We summarily dispose of this final point on appeal.

Affirmed in part; reversed and remanded in part.

ABRAMSON and WHITEAKER, JJ., agree.

*Kimberly Stibich*, pro se appellant.
*Stephanie Chamberlin PA*, by: *Stephanie Chamberlin*, for appellee.