
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
No. CV-15-615

|  |  |
|---|---|
| | Opinion Delivered: JUNE 8, 2016 |
| MELANIE HOOVER (now LYONS) **APPELLANT** | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. DR–12-3955] |
| V. | |
| JOEL HOOVER | HONORABLE VANN SMITH, JUDGE |
| **APPELLEE** | AFFIRMED |

## KENNETH S. HIXSON, Judge

This is a domestic-relations case, and the issues on appeal involve the modification of child custody. Appellant Melanie Lyons and appellee Joel Hoover were married in 2002. During the marriage, the parties had three children. The parties divorced on February 21, 2013, and the parties agreed to joint legal custody with Melanie being the primary custodial parent subject to Joel's standard visitation. Joel later filed a motion to modify custody. On May 19, 2015, the trial court entered an order modifying custody from "joint legal custody of the minor children with mother being the primary custodial parent charged with day to day decisions" to "joint custody of the minor children in accordance with the division of responsibilities as set out [therein]." The trial court adopted the recommendation of the

attorney ad litem and ordered the parties to share physical custody of the children on an alternating weekly basis.[1]

Melanie now appeals from the May 19, 2015 order that changed joint custody with physical custody with her to joint custody with shared physical custody. For reversal, Melanie argues (1) that the trial court erred in finding a material change in circumstances, and (2) that joint shared physical custody is not in the best interest of the children. We affirm.

This court performs a de novo review of child-custody matters, but we will not reverse the trial court's findings unless they are clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 110 S.W.3d 731 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake

---

[1] The legal lexicon used in the original divorce decree awarding custody and the order modifying custody on appeal present a challenge to avoid a misunderstanding on appeal. In the original divorce decree the parties agreed, and the trial court ordered, "joint custody of the minor children with the mother being the primary custodial parent charged with day to day decisions." The father was awarded standard visitation. The children resided with their mother and had standard visitation with the father. That is not what is typically referred to as true joint custody and could, therefore, cause confusion herein. When the trial court ordered the modification of custody that is on appeal, the court awarded "joint custody of the minor children in accordance with the division of responsibilities as set out above." Most importantly, the trial court ordered that the children reside alternate weeks with each parent; and, that the father would have the responsibility for all educational issues and the mother would have the responsibility for all medical and other issues. Again, this arrangement is not what is typically referred to as true joint custody, and again, it is ripe for confusion. It appears to this court that the trial court modified one version of joint custody to another version of joint custody. Regardless of the accuracy of the lexicon used, the issue on appeal is the same: whether the trial court abused its discretion in modifying the custody arrangement of the minor children. To avoid confusion, we are going to refer to the mother's position herein as "the trial court erred in changing joint custody with primary physical custody in mother" to "joint custody with shared physical custody."

SLIP OPINION

has been made. *Smith v. Parker*, 67 Ark. App. 221, 998 S.W.2d 1 (1999). We recognize and give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007). For the trial court to change custody of children, it must first determine that a material change in circumstances has transpired from the time of the divorce decree, and then determine that a change in custody is in the best interest of the children. *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002). It has often been said that we know of no case in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as when the interests of minor children are involved. *Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003).

Not long after the parties' divorce the parties filed countermotions for contempt. Joel alleged that Melanie was denying him visitation and threatening to relocate with the children out of state, while Melanie alleged that Joel had been abusive to the children and was uninvolved with their schoolwork. These contempt motions were ultimately denied by the trial court. However, the conflict between the parties continued, with Joel filing another contempt motion and accompanying motion to modify custody, and Melanie filing for an order of protection against Joel, alleging that he had physically abused both her and the children. Melanie also filed criminal domestic-battery charges against Joel, resulting in his arrest. Melanie's petition for the protective order was subsequently dismissed, and she later dropped the criminal charges. Joel's contempt motion, as well as a subsequent contempt motion filed by Melanie, were ultimately dismissed.

A four-day hearing on Joel's motion to change custody was held in April and May of 2015. Much of the testimony demonstrated that since the time of the divorce, the parties have had, at times, considerable difficulty cooperating and communicating.

A particularly acrimonious event between the parties occurred on July 15, 2014, when Joel was attempting to transport the children to Fort Smith to drop off the children for a week to see his parents during his visitation. Prior to them leaving Little Rock, Melanie advised Joel that their youngest child did not want to go, and she claimed that Joel grabbed the child from her arms and knocked her down. After Joel left with the children for Fort Smith, Melanie called 911 and reported that the children had been kidnapped. In response to Melanie's call, Joel was stopped on Interstate 40 near Mayflower by officers with the Arkansas State Police, Little Rock Police Department, and Mayflower Police Department, with the children present in his vehicle. After being detained by the police for a couple of hours, Joel was eventually allowed to proceed to Fort Smith with the children. This event was the impetus for Melanie's filing for a protective order and criminal charges against Joel, and the event occurred just one day before Joel filed his motion to change custody.

Melanie testified that after the parties divorced in February 2013, she remained in the marital home with primary physical custody of the three children. It is a four-bedroom home, and Melanie still lives there. Melanie married a man named Chris, who lives in Georgia and splits time between Georgia and Arkansas. Chris has two children from a prior marriage who live in Georgia and with whom he exercises visitation. Melanie's three

children have met Chris's children and get along with them well. There was testimony that Melanie is involved with the children's education and activities and is a good mother.

Joel also lives in a four-bedroom home. Joel testified that he and his fiancée, Lauren, were getting married about a month after the custody hearing. Lauren has custody of her two boys from a prior marriage. After Joel and Lauren married, they planned to live in his house with all five children. Joel's children and Lauren's children get along well, and they were all scheduled to attend Holy Souls private school for the next school year. Joel has a sister who lives in Little Rock and helps transport the children home from school and to certain activities. If awarded custody, Joel said that he would arrange for the children to attend after-school child care. Joel has remained involved in the children's activities, acting as a coach and helping with boy scouts. There was testimony that he is a good father.

After the hearing on Joel's motion to change custody, the trial court entered an order specifically finding that there had been a material change in circumstances since entry of the divorce decree. The trial court found that there had been constant turmoil caused by Melanie since the divorce, highlighted by her petition for an order of protection and criminal charges filed against Joel. The court also considered the fact that Melanie had remarried and that Joel was soon to be remarried. The trial court further found that Joel was not without fault in that he had displayed anger on occasion in front of Melanie and the children. Without expressly stating that a change of custody was in the best interest of the children, the trial court then awarded joint shared physical custody of the children to the parties. Because there is a presumption that a trial court made the findings necessary to support its judgment, *see Tillery v. Evans*, 67 Ark. App. 43, 991 S.W.2d 644 (1999), we

SLIP OPINION

presume that the trial court considered the best interest of the children when awarding joint shared physical custody. In its order, the trial court made Joel responsible for all educational matters regarding the children, while making Melanie responsible for all medical and other needs of the children, with each party having final decision-making authority in their assigned areas.

On appeal from the trial court's order changing the custody arrangement to joint shared physical custody, Melanie first argues that the trial court erred in finding a material change in circumstances. While Melanie concedes that there was discord between the parties, she attempts to minimize this as a "scattering of petty complaints," and she posits that there was no evidence that the parties' animosity had a negative impact on the children. Melanie argues, in the alternative, that even had there been a material change, joint shared physical custody is not in the best interest of the children. Melanie contends that the stability of the children is not served by joint shared physical custody, and suggests that the trial court only awarded joint shared physical custody to punish her.

We conclude that there was a material change in circumstances sufficient to reopen the issue of child custody. The record shows that Melanie has remarried and that Joel was scheduled to be remarried a month after the custody hearing. Although remarriage alone is not a sufficient reason to change custody, it may be considered as a factor in a change-of-circumstance analysis. *Baker v. Murray*, 2014 Ark. App. 243, 434 S.W.3d 409. In addition to the parties' remarriages, there was evidence that Melanie had caused considerable turmoil since the divorce, and that Joel had on occasion displayed anger toward Melanie during the parties' confrontations in the presence of the children. Some of the problems were evidently

attributable to the hostile relationship between Melanie and Joel's girlfriend, to whom Joel would soon be married. Also contributing to the discord was the parties' original agreement, which granted each other the right of first refusal for babysitting in the event the parent with the children required babysitting services. Joel alleged in his petition to change custody that the court should "terminate the right of first refusal due to the problems being caused by the flexible summer schedule and the right of first refusal." In addition, there were hundreds of texts introduced reflecting the acrimony between the parties. Citing the elevated degree of discord between the parties since they had been divorced, the trial court found a material change in circumstances, and we cannot say that this finding was clearly erroneous.

We next address Melanie's argument that the trial court clearly erred in finding that joint shared physical custody was in the best interest of the children. Both parties note in their briefs that, in 2013, our legislature enacted an amendment providing that, "In an *action for divorce*, an award of joint custody is favored in Arkansas." Ark. Code Ann. § 9-13-101(a)(1)(A)(iii) (Repl. 2015) (emphasis ours). In our recent opinion in *Stibich v. Stibich*, 2016 Ark. App. 251, we reversed an order changing custody to joint custody in a post-divorce proceeding, and wrote, "Regardless of whether joint custody is favored, our law remains that 'the mutual ability of the parties to cooperate in reaching shared decisions in matters affecting the child's welfare is a crucial factor bearing on the propriety of an award of joint custody, and such an award is reversible error when cooperation between the parties is lacking.'" 2016 Ark. App. 251, at 5 (citing *Gray v. Gray*, 96 Ark. App. 155, 239 S.W.3d 26 (2006)). In the case at bar, Melanie argues that joint shared physical custody was

improper because the parties lacked the ability to cooperate in reaching shared decisions in matters affecting the children's welfare.

Recognizing the superior position of the trial court to evaluate the witnesses, their testimony, and the children's best interest, we are not left with a definite and firm conviction that the trial court made a mistake in awarding joint shared physical custody. Although the record demonstrates that there is a significant level of animosity between these parties, the record also shows that both parties are capable parents who love their children and are equally involved with their activities. The attorney ad litem stated on the record that all three children expressed the desire to spend significantly more time with their father, and a joint shared physical custody arrangement accommodates those wishes. Although the trial court could have decided to leave primary physical custody with Melanie or award primary custody to Joel, we cannot conclude on this record that awarding joint shared physical custody was clearly erroneous. Nor do we find any evidence to support Melanie's claim that joint shared physical custody was ordered by the trial court to punish her.

The dissenting opinion cites *Stibich v. Stibich*, *supra*, where we reversed an award of joint custody on the undisputed evidence that the parties fought constantly and were unwilling to agree on anything. While the parties herein often times displayed unpleasant and undesirable conduct, we observe that the level and duration of friction between the parties in *Stibich* far exceeded that which was present in this case. The trial court's order elucidates on this difference:

> The right of first refusal contained in the decree of divorce is hereby set aside and held for naught. Even though the parties negotiated this provision in the decree, it has caused nothing but problems and has possibly led to more turmoil than any other thing in the divorce decree. Even though the parties cannot get along at this time,

the Court sees a glimmer of hope in both of them in that both are bright, articulate and caring parents for their children even though their actions have, or should have, embarrassed both of them. When each parent is alone with their children, this Court has no doubt that the children receive excellent care, love, nurture and all the attention the children need and deserve. The Court hopes that after this litigation is completed, the Plaintiff and Defendant, and their spouses, can reach a level of understanding and trust that will not hinder the development of the children and will place the children in an environment that is peaceful and secure.

More importantly, in the instant case, the trial court's modified custody order was carefully fashioned in such a way as to reduce the need for the parties' interaction in reaching shared decisions involving the medical and educational needs of the children and by eliminating the requirement of right of first refusal for babysitting. Each child-custody determination ultimately must rest upon its own facts, and on the facts presented in this case we conclude that the trial court's custody award was not clearly erroneous.

Affirmed.[2]

HARRISON, GLOVER, WHITEAKER, and BROWN, JJ., agree.

ABRAMSON, J., dissents.

**RAYMOND R. ABRAMSON, Judge, dissenting.** Initially, I agree with the majority that the circuit court was correct in finding a material change in circumstances. However, I strongly disagree with my brethren that the award of joint custody to parties who cannot cooperate was in the best interest of the children.

---

[2] Also before this court is a motion by the appellee for fees and costs associated with his paying for a short supplement to the record and filing an eighty-page supplemental abstract. However, we conclude that the appellant's abstract was sufficient and in compliance with our abstracting rules, and that none of the material provided by the appellee in his supplemental abstract was necessary for our review of this appeal. Therefore, appellee's motion for fees and costs is denied.

The majority asserts that this case is distinguishable from *Stibich* because the level of friction in *Stibich* exceeded the friction in this case. Law enforcement intervention, criminal charges, and a petition for a protective order are far from petty. The court specifically described the parties' relationship as "constant turmoil." Moreover, the majority ignores that the attorney ad litem recommended that the court award Joel sole legal custody, citing the parties' disagreements. In her closing arguments, the ad litem noted that she had made a list of nineteen separate issues that Melanie and Joel could not agree on. The list included a range of issues from G.H.'s dyslexia accommodations to his haircut. This level of discord surpasses "unpleasant and undesirable conduct," as the majority describes the parties' behavior, and an award of joint custody in these circumstances is diametrically opposed to our case law. The circuit court saw "a glimmer of hope" that the parties could improve their behavior, but it is not in the best interest of these children to continue to be the center of turmoil on the off chance that their parents will cooperate in the future when they have been at each other's throats since the divorce.

The majority also asserts that the circuit court's division of decision-making duties will diminish the parties' friction. I disagree. I fear that the majority's decision will cause confusion among the bar and bench in future custody cases. At what level of noncooperation are parties precluded from sharing joint custody? Of greater concern is the evidence that the parties disagreed on accommodations for G.H.'s dyslexia, an issue that straddles the line between educational and medical decisions.

Accordingly, given our precedent, the circuit court's own recognition that the parties cannot cooperate, and the overwhelming evidence demonstrating their discord, I would

reverse the circuit court's order of joint custody and remand the case for an award of custody

based on its determination of the best interest of the children.

*Cullen & Co., PLLC*, by:  *Tim J. Cullen*, for appellant.

*Hoskyn Law Firm*, by:  *Charles R. Hoskyn*, for appellee.