Cite as 2020 Ark. App. 156

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-19-288

| | |
|---|---|
| SARAH LEE (NOW WHITING)<br><br>APPELLANT<br><br>V.<br><br>AARON CHILDS<br><br>APPELLEE | **Opinion Delivered** March 4, 2020<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. 43DR-08-873]<br><br>HONORABLE JASON ASHLEY PARKER, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Sarah Whiting appeals the circuit court's January 2019 order that awarded Sarah and appellee Aaron Childs joint physical custody of their ten-year-old daughter AMC. Previously, the parents shared joint legal custody, and Sarah had primary physical custody; Aaron had visitation privileges. Sarah argues that the circuit court clearly erred (1) in finding that there were material changes in circumstances, and (2) in concluding that AMC's best interest was served by changing to joint physical custody, expanding Aaron's time with AMC. We affirm.

The law on this subject is well settled. A judicial award of custody will not be modified unless it is shown that there are changed conditions demonstrating that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to, or not known by, the circuit court when the original custody order was entered. *Case v. Van Pelt,*

2019 Ark. App. 382, 587 S.W.3d 567. Generally, to promote stability and continuity in the life of the child and to discourage repeated litigation of issues that have already been decided, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Id.* The party seeking modification has the burden of showing a material change in circumstances. *Id.* This court performs a de novo review of child-custody matters, but we will not reverse a circuit court's findings unless they are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* Because the question whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving minor children. *Id.*

With these rules in mind, we turn to the facts and evidence of this case. AMC was born in August 2008 to unmarried parents. Aaron filed a petition to establish his paternity in October 2008. By a June 2009 order, Sarah was awarded primary physical custody, and they shared joint legal custody, although Sarah had final decision-making authority. The order established Aaron's child-support obligation. Aaron was awarded standard visitation that included overnight visitation each Wednesday, alternating weekends from Friday evening to Sunday evening, two weeks of summer visitation, and specified holiday visitation.

By 2012, the parties fell into discord, resulting in an August 2013 order that admonished both parents to change their behavior and cooperate in the best interest of their four-year-old daughter. Aaron had married. This order clarified that any responsible member of either parent's family had permission to vacation out of state with the child and to pick up or drop off the child as routinely necessary. Travel, however, was not to interfere with the other parent's court–ordered time unless agreed to in writing. Each party was permitted one call per day to AMC when she was in the other parent's custody, from 7:00 p.m. to 8:00 p.m. In 2016, Aaron, his wife Holly, and their children moved from Benton to Cabot. Sarah and AMC lived in Cabot.

In July 2017, Aaron filed a motion seeking to change custody. Aaron sought full custody or, in the alternative, joint physical custody. Aaron alleged material changes and contended that it was in AMC's best interest to grant his motion, including that

1. Sarah had initially been supportive of his move to Cabot and expressed willingness for AMC to have more time with Aaron and his family;

2. Sarah instead disallowed any additional time and frustrated his attempts to see AMC;

3. After his move, Sarah indicated that she might marry her boyfriend and move with the child to Fayetteville, all in order to create distance between him and his daughter;

4. Sarah refused to allow him and his family to care for AMC when Sarah was working, choosing instead to leave AMC with her boyfriend or her boyfriend's mother;

5. Sarah allowed AMC to travel to Memphis with her boyfriend's mother but did not inform him;

6. Sarah refused to co-parent with him, going so far as to block his calls/texts and then demand he communicate by calls/texts, and did not allow him phone contact

3

during the 7:00 p.m. to 8:00 p.m. window but insisted that she be allowed to call AMC at all hours;

7. Sarah was neglectful of AMC's health, refusing to abide by doctor's suggestions or to promote a healthy lifestyle for AMC; and

8. Sarah was volatile, hateful, punitive, and vindictive toward him regarding his contact with AMC "when it suits her mood."

Aaron contended that Sarah was in violation of the very specific communication and visitation rules established by the circuit court, warranting that she be held in contempt.

In Sarah's response, she contended that it was Aaron whose cooperation had declined and whose behavior was difficult. She denied that she had any intent of moving to Fayetteville, and she noted that there was not a "right of first refusal" provision concerning AMC's care. Sarah stated that she was communicative and informative with Aaron, denying any claim to the contrary. Sarah described the trip to Memphis as a last-minute day trip to the zoo, which was a treat from her future mother-in-law to AMC, AMC's future stepsister, and another child. She believed this allegation was just Aaron's effort to harass and control her. Sarah admitted to having stated that, out of frustration with Aaron's uncooperative behavior, no one would tell her when she could call her child, but she denied it was out of disrespect for or disregard of the court's authority. She denied neglecting AMC's medical needs in any way and instead accused Aaron of letting his wife diagnose AMC. She agreed that vindictive behavior between parents was detrimental to the child, but she denied any such behavior. Sarah asked that Aaron's petition be denied and dismissed. Sarah petitioned for an increase in child support and for the daily 7:00 to 8:00 p.m. telephone-visitation provision to be lifted because it was too confining.

In November 2017, Aaron requested the appointment of an attorney ad litem for AMC, which was granted. Sarah requested drug testing, which was ordered. Sarah married her boyfriend Trey in January 2018, gaining two stepchildren.

In August 2018, Aaron filed an amended petition for a change of custody and to hold Sarah in contempt. The amended petition added that AMC had exhibited extreme anxiety caused by Sarah's hostility toward him. Aaron accused Sarah of several misdeeds, including resisting AMC's counselor's recommendation to allow Aaron more time with AMC; refusing to keep him informed of when AMC would be cared for by others in Sarah's absence; vindictively filing a false and ultimately unfounded report to the medical board alleging that his wife (a medical professional) and her employer (a doctor) provided improper medical treatment to AMC; and putting AMC in the middle of adult issues.

At the hearing, both parents testified to their love for AMC and their dedication to her well-being. Both parents had remarried, brought positive stepparents and stepsiblings or halfsiblings into AMC's life, and had suitable housing and employment. AMC was a bright and sensitive child. None of this was in dispute. The litigation centered on the discord between the parents, for which each parent blamed the other, and its effect on AMC.

During her testimony, Sarah agreed that there would be "no problem" extending AMC's time with Aaron to include overnight on Sunday evenings on his weekends when she was working, although she was not agreeable to giving Aaron Thursdays too. Sarah had taken a new nursing job. After completing orientation, she would be working twelve-hour shifts (7:00 a.m. to 7:00 p.m., with a forty-minute commute each way) on Wednesdays, Thursdays, and alternating weekends on Saturdays and Sundays. Sarah wanted to retain her

Thursday nights with AMC because she would have more than an hour with her before her bedtime. Sarah said she gave Aaron extra time with AMC "most of the time," but she wanted the order to remain as it was.

The attorney ad litem's testimony and court report were persuasive evidence for the circuit court. The ad litem explained that these were both devoted parents; that this case "begs badly for co-parenting"; that AMC needs to be taken out of the middle and relieved of the notion that she controlled where she spent her time; and that AMC needed permission to be a child and to love and enjoy time with both sides of her family. The ad litem's overarching concern was Sarah's being overly controlling and creating anxiety in AMC for any act perceived as disloyal to her mother. The ad litem stated, "[T]here's no doubt there's been a material change in circumstance" and that AMC's anxiety alone was enough of a material change. The ad litem urged the court to continue to allow AMC to stay with Aaron every Wednesday (as previously ordered) but also to add Thursdays because Sarah would be gone from 5:45 a.m. to 7:30 p.m. for work. The ad litem recommended that, when Aaron had AMC for the weekend, AMC should stay overnight with him on Sundays. The ad litem believed that this was in AMC's best interest "for a lot of reasons." AMC had consistently told the ad litem she wanted to stay with her father on Sunday nights, and the ad litem opined that AMC's relationship with her father and his family was not going to thrive as it should without extra time. The ad litem also recommended that AMC continue with therapy.

The circuit court agreed with the attorney ad litem that there were "aggregate" material changes in circumstances, "including but not limited to" Aaron's move to be in

6

proximity to AMC and Sarah, the addition of new siblings, the communication issues that were affecting AMC and necessitating therapy, and Sarah's inclination to withhold visitation. The circuit court remarked that AMC's "best interest is to be a child and be able to be at both homes the most she can to where she feels the love from both homes equally and as much as possible." The court ordered, in line with the ad litem's recommendations on the schedule, that the parties would have joint physical custody. The previous order on joint legal custody, with Sarah having final decision-making authority, would remain intact. The circuit court's order mandated that the parents participate in co-parenting counseling to improve communication and that the parents use "Our Family Wizard" (an online scheduling program) for routine scheduling. The circuit court held Sarah in contempt for the spiteful and frivolous medical-board complaint she filed against Aaron's wife. Sarah appeals.

The essence of Sarah's appeal is her argument that there were no material changes in circumstances in that (1) there were always communication issues between these parents that amounted to nothing more than petty complaints or gamesmanship, and thus no material change, and (2) the changes Aaron created (moving to Cabot, remarrying, adding halfsiblings to AMC's life, and his causing AMC's anxiety) could not be material because a noncustodial parent cannot create the material changes to trigger a change in custody. Aaron responds that the aggregate of the facts viewed together, and the anxiety that Sarah was responsible for triggering in AMC, were sufficiently changed circumstances warranting the circuit court to consider which custody arrangement was in AMC's best interest.

We are not persuaded that the circuit court clearly erred in this instance. Our de novo review convinces us that the material changes here were AMC's suffering undue anxiety with the previous custody arrangement, which anxiety the child's ad litem attributed primarily to Sarah, and AMC's need for additional, predictable time with her father. Taking out the other alleged material changes, those negative mental and emotional effects on AMC constitute a material change in circumstances in this particular case.

Sarah also argues that, even if there were material changes in circumstances, it would not be in AMC's best interest to order the parties to have joint physical custody. We disagree. We begin by pointing out that Sarah agreed in her testimony that on the alternating weekends that Aaron had AMC, his time should be extended until Monday morning. With that concession, and as a practical matter, the issue here is the court's order that officially added every Thursday to Aaron's visitation, on which days Sarah would not be home from before 7:00 a.m. until after 7:00 p.m.

The attorney ad litem's testimony and court report support the circuit court's decision. The attorney ad litem opined it to be in AMC's best interest to be permitted more time with Aaron and his family, which AMC wanted, unfettered by Sarah's discretion to disallow that time or Sarah's causing anxiety in the child for wanting it. A child's preference, although not binding on the circuit court, is a factor to be considered in determining custody. *Williams v. Williams*, 2019 Ark. App. 186, 575 S.W.3d 156. Each child-custody determination ultimately must rest on its own facts. *Cunningham v. Cunningham*, 2019 Ark. App. 416, 588 S.W.3d 38 (affirming joint-custody award and noting that most joint-custody situations involve some amount of disagreement); *Grimsley v. Drewyor*, 2019 Ark. App. 218,

575 S.W.3d 636 (same). In these circumstances, and in line with the due deference we give to circuit courts in custody matters, we hold that the circuit court did not clearly err in finding joint physical custody to be in AMC's best interest.

Affirmed.

GRUBER, C.J., and VIRDEN, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Scholl Law Firm, P.L.L.C.*, by: *Scott A. Scholl*, for appellee.